JOHN MILLER, Executor of TAMAR COOCH, Deceased,

*vs.*

JOSEPH W. COOCH, Administrator *c. t. a.* of WILLIAM COOCH, Deceased, *et al.*

New Castle, Feb. T. 1877.

*Will; construction; charging realty with payment of debts and legacies; exoneration of personalty; instructions as to administration.*

A testator, after declaring that his executor should pay all his just debts and funeral expenses as soon after his decease as possible, gave all his personal property, and $3,500 in cash, out of his real estate, as soon as sold by his executor, to his wife ; and in a subsequent item of his will gave $500 to another ; and in a subsequent item devised the balance of his estate to two brothers, to be divided between them share and share alike ; and directed all his real estate to be sold at public sale, by his executor, within one year after his decease. *Held :*

(*a*) That the personal estate, being the primary fund for the payment of debts and funeral expenses, was not, by the terms of said will, or by a proper construction thereof, exonerated from such liability; nor was the said real estate charged therewith.

(*b*) That the gift of all his personal property by the testator to his wife was not specific in any other sense than as distinguished from the real estate or the balance of the testator's estate, being the proceeds of the sale of his real estate after the payment to which the same was properly subject was deducted.

(*c*) That, the whole frame and scheme of the will showing that the testator intended the legacy of $500 should be paid absolutely and at all events, and he having previously given all his personal property and $3,500 to his wife out of the sale of his real estate, the said balance of his estate is subject to the payment of the said legacy of $500.

5 DEL. CH.                    11

(*d*) The court will not, solely on the application of a legatee named. in a will, direct the person having the execution of the will how to administer the estate, such person not asking for instructions and the bill filed not praying relief.

BILL FOR THE CONSTRUCTION OF A WILL.—William Cooch,. in his last will and testament, devised as follows:

Item 1. It is my desire and wish that my executor, herein-after named, shall pay all my just debts and funeral expenses as soon after my decease as possible.

Item 2. I devise, give, and bequeath to my beloved wife, Tamar, all my personal property, and $3,500 in cash out of my real estate, as soon as sold by my executor.

Item 3. I devise, give, and bequeath to Dillon Hutchinson the sum of $500.

Item 4. I devise, give, and bequeath to my brothers Zebulon H. Cooch and Levi G. Cooch the balance of my estate,. to be divided between them share and share alike.

It is my desire and wish that my executor hereinafter named. shall sell all my real estate at public sale within one year after my decease, and convey to the purchaser or purchasers thereof a good and lawful deed or deeds for the same.

The testator then appoints his brother Levi G. Cooch executor of his will.

The bill is filed for the purpose of obtaining from the court a construction of the will of William Cooch as to the rights of the respective legatees and devisees named therein; or perhaps, to speak more properly, to have the rights of the executor of Tamar Cooch, and the rights of those whom he represents, determined by judicial construction. The material portions of the prayer are: " That this court will give the just and. true construction of said will of William Cooch, deceased, and direct the defendant, the said administrator *cum testamento annexo*, therein; and particularly: (1) whether under the said will the said Tamar, his widow, was or was not entitled to all of the personal property of the said William Cooch at the time of his death, which passed under his will to his personal

representative for administration, without diminution for funeral or testamentary expenses, or for debts or other legacies under the said will, there being ample other property belonging to the estate of said testator for the payment of all such expenses, debts, and legacies designated in said will and ordered to be converted into personalty ; or (2) to what extent, under a just construction thereof, the said Tamar was entitled in her lifetime, and the complainant, as her personal representative since her decease, is entitled."

The executor of Tamar Cooch claims that she was entitled under this will to all the personal property of which William Cooch died possessed, or to which he was entitled at the time of his death, without any deduction therefrom on account of funeral and testamentary expenses, or on account of the payment of debts and legacies, and to $3,500 out of the proceeds of the sale of the real estate ; that by the bequest of all of his personal property he meant that there should be no diminution therefrom for any purpose whatever ; and that, whatever charges his estate might be subjected to in the course of its administration, the proceeds of the sale of the real estate, and not his personal property, was the primary fund for their payment.    The opposite view is maintained by the defendants.

*John C. Patterson,* for the complainant :

In the construction of wills, the court cannot reject words having an obvious meaning, upon a suspicion that the testator did not know what he meant.    *Milne* v. *Slater,* 8 Ves. 306.

A bequest of all one's personal property by a testator leaving realty, in itself and necessarily implies a throwing of debts upon the realty ; and a simultaneous order for the sale of such real estate, and its conversion into money by the executor, is a contemporary provision by the testator for meeting such debts and other pecuniary legacies.    And a gift of the personalty, when there remain real assets sufficient to pay debts and other liabilities, is in itself, in equity, a discharge of the personal estate and a charge on the realty.

In *Kightley* v. *Kightley,* 2 Ves. Jr. 329, the principle was

admitted, but its application disallowed, because the real estate was specifically devised.

A devise of residue is not a specific devise; and if a testator blend his real and personal estate in a general devise of the residue, the legacies are a charge upon the lands. *Witman* v. *Norton*, 6 Binn. 395.

In the distribution of assets the court always applies those not specifically given to anyone, before those that are specifically given. 3 Ves. Jr. 552.

Courts will subject land to legacies, *inter alia :* (1) where it is converted into personalty, or "out and out" for general purposes (see 3 Ves. Jr. 551; 4 Harrington, 337); (2) when provision for wife or child (1 Ves. Sr. 499); (3) when the words of testator would charge it with debts in England (*Trott* v. *Vernon*, 2 Vern. 708; Prec. in Ch. 430; 2 Ves. Jr. 330; 3 Ves. Jr. 738; 2 Ves. Sr. 313).

A court of chancery will so marshal assets that, so far as possible, the whole will may take effect and all the legatees be paid (*Masters* v. *Masters*, 1 P. Wms. 422).

The proceeds of the realty, by the conversion into personalty, lose their character of realty, and are liable to debts and legacies without an express provision.

Where testator combines real with personal generally, the real is subject to all the burdens of the personal. *Kidney* v. *Coussmaker*, 1 Ves. Jr. 444; 2 Binn. 531, 532; 6 Binn. 394.

Under a devise to sell and pay funeral expenses and debts, the personal estate was exempted, without express words, upon the evident intention. *Burton* v. *Knowlton*, 3 Ves. Jr. 107.

To exempt the personal estate there may be, the intention may be collected from the whole will, and need not be *in totidem verbis*. *Tait* v. *Northwick*, 4 Ves. 824.

There is no magic in words; no peculiar form of expression is necessary in order to exonerate the personal estate. If the intention of the testator be evident to exonerate the personalty, it must be exonerated. *Webb* v. *Jones*, 2 Bro. Ch. 60.

Cases of exoneration of personal estate from debts, or debts and legacies, are : *Hale* v. *Cox*, 3 Bro. Ch. 322 ; *Waring* v. *Ward*, 5 Ves. 670.    See 1 Story, Eq. Jur. §§ 571–574 ; 2 Mylne & K. 49.

The intention of exoneration may be found not only in the manner in which the personal estate is given, but also in the mode in which the real estate is given. *Hancox* v. *Abbey*, 11 Ves. 186.

To exonerate personal estate from the payment of debts, there must appear on the face of the whole will a manifest intention to that effect.    *Driver* v. *Ferrand*, 1 Russ. & Myl. 681 ; *Greene* v. *Greene*, 4 Madd. 148.

Land cannot be exonerated out of personal estate to the prejudice of any person having a prior claim to be satisfied. 2 Wms. Exrs. 1207.

The personal estate is not to be applied in ease of the real to the defeating of any legacy, or of the wife's claim to paraphernalia.    1 P. Wms. 730, 678, 693, 403.

A devise of all the rest of testator's lands is a residuary, not specific, devise ; and the person taking it shall not come in until after the debts, by specialty or otherwise, shall have been paid out of his inheritance.    1 P. Wms. 403.

Equity will charge the real estate with debts, in order to enlarge the fund for the payment of the legacies as well as debts, whether the legacies be specific or pecuniary, provided they be not residuary.    2 P. Wms. 190, 330, 335.

A specific bequest is merely the severance of that particular property from the great body of the estate, and the specific gift of it to the legatee.    1 Roper, Leg. 185, 186.

When the personal estate is given in a will as a specific legacy, it shall not be applied in exoneration of the real estate. *Walker* v. *Jackson*, 2 Atk. 624 ; 1 Wil. 24 ; Bunb. 302.

A gift of all one's personal property as a specific bequest (the term " effects " coupled with the context), there being real estate out of which the debts may be paid, operates to exonerate the personal estate therefrom.    *Michell* v. *Michell*, 5 Madd. Ch. 69.    See *Greene* v. *Greene*, 4 Madd. 148.

A residuary devise of land is not specific, and is therefore subordinate to a specific legacy. See *Long* v. *Short*, 1 P. Wms. 403.

A devise of a residue is not a specific devise, but covers what remains after preceding specific and pecuniary devises, bequests, and provisions of the will. See 6 Binn. 390; *Whitman* v. *Morton*, 2 Binn. 532. Hence, the bequest of " the balance of my estate " to testator's brothers, in the fourth item of the will before us, means what should be left after the payment of debts, legacies, and funeral expenses. It is " the balance " remaining after all the preceding bequests and provisions of his will.

After giving a legacy, a testator devised the balance of his estate to other persons. On a deficiency of assets the legacy was held to be charged on the real estate. O'Hara, Wills, 238, citing 42 Barb. 43.

If land is charged, and the whole personal estate is bequeathed specifically, and not as a residue, the personalty is exonerated. O'Hara, Wills, 240, citing 53 Barb. 267; 27 Barb. 64; 1 De G. & Sm. 131; 1 Sim. 79.

In *Noel* v. *Weston*, 2 Ves. & B. 272, *Sir* Thomas Plumer, *V. C.*, states the effect to be allowed to a general introductory clause of a will, expressing a general intention that debts, funeral charges, etc., shall be paid, viz., " to be considered as the rule, in some respects overrunning the whole will."

In *Powell* v. *Riley*, L. R. 12 Eq. Cas. 175, before *Sir* R. Malins, *V. C.*, in a case where a testator had bequeathed all his household goods and furniture, farming-stock, money, goods, chattels, and effects, and all other his personal estate, to his wife absolutely, and then devised a freehold estate, called the Rye Crofts, for sale and payment of debts, and the surplus to his wife; and then devised another freehold estate to his wife absolutely, and other estates to his wife for life, with remainders over; and the Rye Crofts estate was insufficient for payment of debts,—it was held that the bequest of personalty to the wife was specific, and that such bequests and the specifically devised real estates must contribute rata-

bly to the payment of the surplus debts for which the Rye Crofts estate was insufficient.

In so ruling the vice-chancellor cites without disapproval the cases of *Greene* v. *Greene*, 4 Madd. 148; *Michell* v. *Michell*, 5 Madd. 69; *Lance* v. *Aglionby*, 27 Beav. 65; *Gilbertson* v. *Gilbertson*, 34 Beav. 354; and distinguishes the case before him from those of *Taylor* v. *Taylor*, 6 Sim. 246; *Tower* v. *Rous*, 18 Ves. 132, 138, and that class of cases.

In the case before us the direction is to the executor to pay,—and a fund is specially raised for that purpose,—by directing him to sell the real estate within the time within which such payment can legally be required (one year), in the absence of the availability of the personal estate for that purpose, he having already disposed of that by gift to his " beloved wife, Tamar ; " so that in no event can it be said that the construction contended for by the complainant in this case would leave the executor without the means of complying with the testator's directions in that behalf.

Here, there having been a clear exoneration of the personal estate from being subject to the ordinary primary liability of personal estate to the payment of debts, legacies, and funeral expenses, by a clear and plainly manifested intention, and express declaration that his wife should take " all his personal property," thereby leaving nothing thereof for debts and legacies to attach upon, and by an express and actual order for the conversion by his executor of his realty into personalty, whereby there was an actual substitution of another competent fund for the purpose of paying debts and legacies, only the balance or residue of which was devised over, there was no pretense—in fact there was no room—for the application of what in ordinary cases might be the rule in equity, and requiring that the testator's personalty should first be resorted to for the payment of those legal charges for which he had so clearly, unequivocally, and amply otherwise made provision. See 1 Meriv. 193, 210; 1 Cox, 254; 2 Atk. 79.

In fact any other construction, instead of giving effect to testator's intention, would be manifestly disregarding and set-

ting at naught his expressed intention, and allowing a conventional and capricious construction of the court to override his expressed intention and defeat his meritorious purpose.

Finally, the desire of testator, expressed in his will, that his executor shall, within a year after his decease, sell and convey his real estate, is a conversion of it " out and out," and the proceeds are applicable to pecuniary legacies. *Sharpley* v. *Townsend*, 4 Harrington, 337, and cases cited.

And, as in this case, all the personal property primarily such is specifically bequeathed, the debts, legacies, testamentary and funeral expenses, are thrown upon the personal fund thence arising out of such "out and out" conversion of the realty.

There have been cases in which the real and personal estates have been administered *pari passu*, where the testator had directed his land to be sold, and mixed up the proceeds with the personalty in one common fund, charged either with debts, legacies, or annuities. O'Hara, Wills, 224, and cases cited; *Powell* v. *Riley*, L. R. 12 Eq. Cas. 175.

If the simple blending of the two species of property, personal and real, subjects the mingled fund to the payment of debts and legacies, *a fortiori* does the conversion, out and out, of the realty into personalty, with a previous specific bequest of "all my personal property to my beloved wife," so subject the fund thus arising. 4 Madd. 187 ; 1 Ves. Jr. 436 ; 2 Ves. Jr. 267.

But, after all, " a will is to be expounded rather on its own particular circumstances than by any general rules of positive law." 1 Bl. Com. 382. See *Bootle* v. *Blundell*, 1 Meriv. 220. And if that rule be applied in the case before us, there can be little doubt that the provision in question in the testator's will, in behalf of his widow, will receive such a construction as will make it a beneficial, and not a nugatory, one.

*George Gray*, for the defendants :

It is a well-established and elementary rule in the administration of assets, both in England and in this country, that

the personal estate is the primary fund for the payment of debts and legacies. 4 Kent, Com. 5th ed. 420 ; 2 Jarm. Wills, 546 ; 1 Story, Eq. Jur. § 571 ; 2 Vern. 248 ; Ram, Assets, chap. 3, § 5 ; 1 Redf. Wills, 275, 276 ; Hill, Tr. 350, 351 ; Bisph. Eq. 321 ; Snell, Eq. 221 ; Smith, Eq. 270.

To exempt the personal estate of a testator from this primary liability, there must be " a clear intention," expressed by, or " a demonstration plain " of, such intention, gathered from the whole will, both to exonerate the personal estate and also to onerate or charge the real estate or some portion of it. Co. Litt. 208 *b*, Butler & H. note 106 ; *Lovel* v. *Lancaster*, 2 Vern. 183 ; *White* v. *White*, Id. 43 ; *Howel* v. *Price*, 1 P. Wms. 291, Cox's note ; *Walker* v. *Jackson*, 2 Atk. 624 ; *Bridgman* v. *Dove*, 3 Atk. 202 ; *Ancaster* v. *Mayer*, 1 Bro. Ch. 454, note ; *Gray* v. *Minnethorpe*, 3 Ves. 103 ; *Burton* v. *Knowlton*, Id. 107 ; *Brummel* v. *Prothero*, Id. 111 ; *Tait* v. *Northwick*, 4 Ves. 816 ; *Hartley* v. *Hurle*, 5 Ves. 540 ; *Brydges* v. *Phillips*, 6 Ves. 567 ; *Watson* v. *Brickwood*, 9 Ves. 447 (see 2 Jarm. Wills, 575, 576, on this case); *M'Cleland* v. *Shaw*, 2 Sch. & Lef. 538 ; *Driver* v. *Ferrand*, 1 Russ. & M. 681 ; *Bootle* v. *Blundell*, 1 Meriv. 192 ; *Walker* v. *Hardwick*, 1 Mylne & K. 396 ; *Rhodes* v. *Rudge*, 1 Sim. 79 ; *Ouseley* v. *Anstruther*, 10 Beav. 453 ; *Powell* v. *Riley*, L. R. 12 Eq. Cas. 175. See also opinion of *Sir* R. Malins, *V. C.*, in *Forrest* v. *Prescott*, L. R. 10 Eq. 549 ; *Lupton* v. *Lupton*, 2 Johns. Ch. 614 ; *Rogers* v. *Rogers*, 1 Paige, 188; *Hancock* v. *Minot*, 8 Pick. 37 ; *Seaver* v. *Lewis*, 14 Mass. 83 ; *Tole* v. *Hardy*, 6 Cow. 333 ; *Hoes* v. *Van Hoesen*, 1 Barb. Ch. 379, and the following text-writers : 1 Story, Eq. Jur. §§ 571–577 ; 2 Jarm. Wills, 565–583 ; 3 Wms. Exrs. 6th Am. ed. 1806–1815, or pt. 4, bk. 1, chap. 2, § 1, 1704, 1712 ; Hawk. Wills, Am. notes, 287 ; Perry, Tr. 514 ; Smith, Eq. 272 ; Eng. & Am. notes to *Ancaster* v. *Mayer*, 1 Lead. Cas. Eq. *646, 673 ; 2 Lead. Cas. Eq. Eng. & Am. notes to *Aldrich* v. *Cooper*, 2 Lead. Cas. Eq. *92, 110.

The personal estate being the primary fund for the payment of debts and legacies, the burden of proof lies on those

who contend that it is exonerated. English note to *Ancaster* v. *Mayer*, 1 Lead. Cas. Eq. *646; *Whieldon* v. *Spode*, 15 Beav. 539.

The bequest of "all my personal property" is not sufficient to exempt the personal estate unless another fund has been expressly provided for the payment of debts, etc., and the intention to exempt is apparent from the will. A specific bequest is a bequest of a specified thing or an ascertained and defined part or portion of the personal estate separated and distinguished from the mass. A bequest of all one's personal estate is not technically a "specific bequest," and in equity such a bequest is only called specific for purposes of construction, and where the intention is otherwise expressed in the will that other property than the personalty shall bear the charges; that is, in such cases such a bequest is sometimes called specific as distinguished from the real estate. *Howe* v. *Dartmouth*, 7 Ves. 137, 149; *Walker's Estate*, 3 Rawle, 229; Am. note to *Aldrich* v. *Cooper*, 2 Lead. Cas. Eq. 333; *Woodworth's Estate*, 31 Cal. 595, 602; 2 Redf. Wills, 475; 2 Wms. Exrs. 1158, 1172; 1 Roper, Leg. 184–186; 2 Spence, Eq. Jur. 336–341; Ward, Leg. 18 Law Lib. 10; *Fairer* v. *Park*, L. R. 3 Ch. Div. 309.

The desire of the testator that his real estate be sold by his executor, taken together with all the provisions of the will, did not make an out and out conversion, or indicate an intention to charge the debts or legacies on the land. *M'Cleland* v. *Shaw*, 2 Sch. & Lef. 544, 545; *Ackroyd* v. *Smithson*, 1 Lead. Cas. Eq. and Am. notes, *904; 1 Jarm. Wills, 473, and cases cited. The evident purpose of the direction to sell was that the $3,500 devised to the wife might be raised, and the balance divided between the brothers. The will does not blend, but studiously keeps apart, the real and personal estates. A testator must be taken to know the law of the country in which he lives, as to the primary liability of the personal estate. *Walker's Estate*, 3 Rawle, 229. Then we have here a bequest to the wife of all the personalty subject to the burden of the debts and legacies which the law

throws on it, and from which the testator has not seen fit to exempt it; and a devise " to her " of $3,500 out of the real estate; then the " balance of his estate " to his two brothers. What was that " balance? " Clearly, the balance of the real estate after the payment of the $3,500 expressly charged upon and taken out of it; because the whole personal estate subject as above had been disposed of, and therefore the word " balance" can have no other relation. Finally, it is submitted that no case in England or in this country has ever departed from the general rule above indicated, and exonerated the personal estate from its primary liability, unless there has been, in addition to the disposition of the personal, a devise of real, estate to pay debts, or some charge upon or dedication of real estate for that purpose, or express exemption of the personal estate by unequivocal language; or, as expressed by Mr. Smith in his Manual of Equity, p. 272 : " If the real estate is directed to be sold for payment of debts, and the personal estate is expressly bequeathed to legatees, then the personal estate will be exonerated by necessary implication. But neither of these circumstances, apart from the other, and from circumstances affording similar implication of intention, is a sufficient indication of an intention to exonerate the personal estate."

The foregoing applies *a fortiori* to the case of legacies, which are always presumptively payable out of the personalty; and if there proves a deficiency for the payment of debts and legacies, the legacies must abate unless they are charged on real estate. And real estate is never so charged unless the intention of the testator so to charge is either expressly declared, or fairly and satisfactorily to be inferred from the language of the will. Especially is this. true when the legacy is sought to be exclusively charged on real estate in exoneration of the personal. 2 Redf. Wills, chap. 1, § 15.

*Charles G. Rumford,* for defendant Dillon Hutchinson :
The construction of a will depends upon the intention of the testator, to be ascertained from a full view of everything

contained within the four corners of the instrument. *Hoxie* v. *Hoxie*, 7 Paige, 187, 192; *Manigault* v. *Deas*, 1 Bailey, Eq. (S. C.) 298.

When the intention of the testator is so ascertained, and it is not in conflict with the rules of law, it is to control and govern the construction of the will; and the court will place itself, so far as practicable, in the position of the testator, and give effect to his leading purpose and intention as indicated by the words of the will construed with reference to all attending circumstances.

Courts will, if possible, adopt such construction as will uphold all the provisions of the will (*Doe* v. *Davies*, 4 Mees. & W. 599; *Crossman* v. *Bevan*, 27 Beav. 502); and in carrying this purpose into effect it is permissible to resort to any reasonable intendment (*Langham* v. *Sanford*, 19 Ves. 647; *Brocklebank* v. *Johnson*, 20 Beav. 205).

The law allows the testator to direct an absolute conversion of real estate into money for all purposes, or what is called a conversion " out and out." To this end it is requisite, not only that the will contain a direction to change land into money, but that it should appear that it was the purpose of the testator that it should, after its conversion, be treated as money for all purposes. 3 Redf. Wills, 140, § 7; *Johnson* v. *Woods*, 2 Beav. 409–413; *Hopkinson* v. *Ellis*, 10 Beav. 169, 175; *Shallcross* v. *Wright*, 12 Beav. 505, 508.

The tendency of the American decisions is to treat all directions in devises or contracts to convert land into money, as intending an "out and out" conversion for all purposes, unless the contrary appear from the instrument itself. 3 Redf. Wills, 140, § 8; *Re Place*, 1 Redf. 276; *Dyer* v. *Cornell*, 4 Pa. 359; *Grider* v. *M'Clay*, 11 Serg. & R. 224; *Pennell's Appeal*, 20 Pa. 515; *Nagle's Appeal*, 13 Pa. 262; *Smith* v. *McCary*, 3 Ired. Eq. 204.

Should the court consider the legacy to the wife of " all my personal property " to be a general legacy, then it will abate in proportion to its amount for the payment of the legacy to Dillon; the rule being, in regard to general legacies, that

if anything remain after meeting all debts and specific legacies, it must be applied to the general legacies in proportion to their amounts, until they are fully paid or fund exhausted. 2 Wms. Exrs. 1223.

THE CHANCELLOR.—It is a general rule—a settled rule— that the personal estate is the primary fund for the payment of funeral and testamentary expenses, debts, and legacies; and this general rule must in every case be applied unless there appears from the whole or some part of the will that a testator intends that his real estate or its proceeds, either of rents or moneys raised upon the faith of it, or by sale, or in some other manner, shall be charged with their payment; and unless it further appears, in like manner, that he does not intend that his personal estate shall be charged with their payment. It must satisfactorily appear that he not only intends to charge his real estate or its proceeds, but that he intends to discharge his personal estate from their payment. It was formerly held that this intention must appear from express words in the will. This doctrine is nowhere maintained at the present day. Had it been strictly adhered to, and not departed from, much litigation would have been saved, and judicial decisions upon this subject would have been much more uniform and consistent. Courts have used different forms of expression in determining the rule to be applied in the solution of the question of primary liability between the personal and real estate. Some judges have said that the intention to make the real estate the primary fund must appear by implication plain; others, by intention clear; others, by irresistible conclusion; others, that the mind of the judge must be convinced that he is deciding according to what the testator intended; others, that the evidence of intention to charge the real estate and to discharge the personalty must be sufficient to satisfy the judicial mind. It was doubtless the intention of the testator in this case that every provision of his will should be carried into effect. He intended that his funeral expenses and debts should be paid;

that his wife should have his personal property and $3,500 out of the proceeds of his real estate; that Dillon Hutchinson should have $500; and that his two brothers should have the balance of his estate; and he intended that his real estate should be sold. He has not in express words said how, or out of what fund, the funeral expenses, debts, and legacy shall be paid. He has not expressly charged either the personal property or the proceeds of his real estate with their payment. He has not by express words exonerated either from their payment. The question to be decided is not whether they shall be paid, but what fund — the personal property, or the proceeds of the sale of the real estate — is primarily liable for their payment. The intention of the testator, if that intention can be collected from his whole will or from any part of it, must determine this question. There is nothing in this will to indicate the intention of the testator to charge the real estate, or the proceeds of its sale, with the payment of the funeral expenses and debts, unless proof of that intention is afforded by the use of the words "balance of my estate," in item 4 of his will. There is nothing in the will to show an intention to discharge the personal estate from their payment, unless proof of that intention is afforded by the words "all my personal property," in item 2 of the will. It will be observed that the testator has not in any manner or for any purpose blended his real with his personal estate, but has throughout his will clearly distinguished them. He has not directed his real estate to be sold, and made the personal property and the proceeds of the sale of the land a single fund for the payment of his debts, funeral expenses, and legacies, and left the surplus proceeds of the sale of the real estate undisposed of, as in the case of *Sharpley* v. *Townsend*, 4 Harrington, 337. In the latter case the court held that, under its particular circumstances, the sale of the real estate was a conversion out and out. In this case it nowhere appears that the testator ordered his real estate to be sold and to be blended with his personalty for any purpose; and he has not left the proceeds of its sale undisposed of; but, to

use the words of the will, he has devised, given, and bequeathed to his two brothers the balance of his estate, to be divided between them share and share alike. The personal estate having been before given away in item 2 of his will, the word " balance," in item 4, can have reference only to the real estate or to the money arising from the sale of the real estate. The conversion under this will is therefore a conversion for the purposes of the will only, and not for all purposes whatever, which would be necessary for the purposes of a conversion out and out. Had the bequest in item 2 of the will been " my personal property," instead of " all my personal property," I presume it would not have been contended that the personal property was exempt from the payment of the debts and funeral expenses.

Do the words " all my personal property " have a fuller or more extensive meaning than the words " my personal property?" Do not the latter words mean the same as the former? Under certain circumstances, the word "all," before personal property, appears to have been considered as of considerable importance, and as showing an intention to bequeath such property as a whole, and not as a residue. In Viner's Abridgment, vol. 8, there is a case in which the testator gave all his personal property to his wife, and £500 out of the proceeds of the sale of his real estate, and devised his real estate to trustees to be sold for the payment of his debts and legacies. *Chancellor* Harcourt decided in that case that the real estate devised for the payment of debts and legacies was the primary fund for their payment, and remarked that it was manifest the testator thought that all his personal estate was not sufficient for his wife, and therefore he gave her £500 out of the proceeds of the sale of his real estate. It will be observed, however, that in that case the real estate was expressly devised to trustees to be sold for the payment of debts and legacies, of which the legacy to the wife was one. This—which, however, would only ordinarily have made the proceeds of sale auxiliary to the personal estate for the payment of debts, and not the primary fund for their payment.

in exoneration of the personal estate — would to my mind have been a more satisfactory reason for the decision than the one assigned.

Mr. Jarman, after reviewing the cases relating to this subject, remarks : " They authorize the proposition that whenever the personal estate is bequeathed in terms as a whole, and not as a residue, and the debts, funeral and testamentary charges are thrown on the real estate, this constitutes the primary fund for their liquidation."

I know of no case, however, where it has been held that the bequest of personal estate, in terms, as a whole, and not as a residue, has been sufficient to make the real estate the primary fund for the payment of debts and legacies, when those debts and legacies have not been thrown upon the real estate otherwise than by the mere bequest of the whole or all of the personalty.   They are not so thrown in this case, unless the intention that such a result should follow appears from a proper construction of the words " the balance of my estate," in item 4 of the will.   Do those words have the effect, when taken in connection with the word " all," in item 2 of the will, to throw the debts, legacies, and funeral charges upon the real estate primarily, and in exoneration of the personal estate?   What is the meaning of those words, and to what have they relation ?

In my opinion the words " balance of my estate " mean, primarily, his real estate, or the balance of the proceeds of the sale of his real estate, after deducting from said proceeds of sale any sum or sums with which those proceeds have antecedently been charged; that the only primary charge upon those proceeds,—pretermitting, for the present, the question as to the legacy to Dillon Hutchinson,—is the sum of $3,500 bequeathed to his wife; and that, the personal estate being the primary fund for the payment of the funeral expenses and debts, the personal estate must first be exhausted before recourse can be had to this balance.   If, after the payment of the debts, funeral and testamentary expenses out of the personal estate, there should be a deficiency, in whole or in part,

for the payment of the legacy of $500, or if, from a proper construction of the will, the personal estate should not be subject to its payment, and it should appear, when that question properly arises between parties who can raise the question, that the whole frame and scheme of the will plainly shows that the testator intended the legacy of $500 to be paid absolutely and at all events ( to use the language of the court in the case of *McLoughlin* v. *McLoughlin*, 30 Barb. 469 ),— it will be time to determine the liability of the proceeds of the real estate for its payment.

That question, however, is not now before the court. It can only be raised in a proceeding to which the legatee and the devisees of the balance of the estate shall be parties. I decline, however, to enter any decree unless it be for dismissal of the bill, upon two grounds : ( 1 ) the bill is filed by the executor of a legatee for direction to the administrator *cum testamento annexo* of the testator how to administer the estate, and not by the administrator asking such direction ; and ( 2 ) the bill contains no sufficient prayer for relief.

The parties having agreed that the bill should be amended so as to present a case for final decision, it was not dismissed, and the cause was continued with leave to amend according to the agreement of the parties, to be subsequently filed. Afterwards, at the February Term, 1877, the bill having been amended as per agreement filed, and the cause being submitted without further argument,—

THE CHANCELLOR said : I adhere to the views heretofore expressed by me in respect to the primary liability of the testator's personal estate for the payment of debts, funeral and testamentary charges. I must, in the language of *Sir* R. Malins, *V. C.*, in *Powell* v. *Riley*, 12 Eq. Cas. 178, attribute to the testator the knowledge that his personal estate was the primary fund for the payment of his debts. With this knowledge he made his will, and nowhere therein declares, either expressly or by "implication plain," that he means to charge the real estate devised to his brothers with the payment of his debts, or that he means to exonerate his personal property therefrom.

12

In the case of *Powell* v. *Riley*, the vice-chancellor, while holding that in that particular case the bequest to the wife was specific, says : " If the will had stopped after the bequest of all his household goods and furniture, live and dead farming-stock, money, and securities for money, goods, chattels, and effects, and all his other personal estate, to his wife, for her absolute use and benefit, it would not, of course, have exonerated the personal property from the primary liability to pay debts." " It is true," he subsequently remarks, " I know no reason whatever, and I know of no authority that decides, that the words 'I give my household furniture' is other than a specific bequest ; " and the solicitor for the complainant in this cause, if I understand him aright, was of opinion that the bequest by William Cooch of all his personal property was a specific bequest, and therefore discharged from primary liability to pay his debts. In a case subsequent to the case of *Powell* v. *Riley*,— the case of *Fairer* v. *Park*, L. R. 3 Ch. D. 309,—it was held that " a gift by will, by a testator to his wife, of ' all my personal property, all sums of money which I may possess or may be owing to me at the time of my decease, together with all the furniture, farming implements, and other things in the family mansion,' was not specific." In that case Hall, *V. C.*, remarked : " The only question on which I wish to hear any argument is whether there was a specific gift to Agnes Park." After argument, the vice-chancellor said : " I am of opinion that, upon the true construction of this will, there is 'not a specific gift of ' all sums of money which I may possess or may be owing to me at the time of my decease, together with all the furniture, farming implements, stock, and crops belonging to the Asby Hall estate, to the defendant, Agnes Park.' " The dispositions are, first of all, a gift of " all my personal property," and then the words which I have read are thrown in, not for the purpose of making anything specific, but for the purpose of preventing the possibility of a question arising as to the specified things being included under the terms " all my personal property." In the will under consideration the bequest of " all my per-

sonal property to my beloved wife, Tamar," is specific in no
other sense than as being distinguished from the testator's
real estate, or the proceeds of such real estate; and "all his
personal property," being given to her, was so given subject
to that primary liability for the payment of the testator's
debts, funeral expenses, and testamentary charges, from which
he has not in his will, either by express words or implication
plain, relieved it.

The will of the testator must, however, be reasonably
interpreted. Having provided that his just debts and funeral
expenses should be paid as soon after his decease as possible,
and then having given all his personal property and $3,500
out of the proceeds of the sale of his real estate to his wife,
there remained nothing out of which to pay the legacy of
$500 subsequently given to Dillon Hutchinson, except the
" balance of his estate,"—the proceeds of the sale of the real
estate after the $3,500 should be deducted. The $3,500 has
been paid by the person having the administration of the
estate of William Cooch, with money advanced by the devi-
sees of the real estate. Dillon Hutchinson has died since the
commencement of this suit, but his administrator is entitled
to receive, out of what the testator calls the "balance of his
estate," the legacy of $500, with interest thereon, or such
part thereof as has not been paid.

I therefore direct that a decree be drawn for the payment
to the executor of Tamar Cooch, by the administrator of
William Cooch, deceased, of the balance of the personal estate
of said deceased, after paying the just debts, funeral expenses,
and testamentary charges appearing on the account filed in
this cause, with interest from the time when the same should
have been paid, together with the costs in this cause, within
three months, or attachment.