JOHN L. SMITH, APPELLANT, *v.* ASA WALKER, ASA H. COCHRAN, LUCY H. COCHRAN (his wife) AND JOHN A. WALL, RESPONDENTS.

PRACTICE — REFERENCE. — When the Court has decided the principles upon which an account should be taken and settled, upon an order of reference, it is not competent for the referee to review the action of the Court; but it is his duty to take the account in pursuance of the principles thus settled.

IDEM. — If errors occur in determining these principles, the party which seeks to have them corrected by the appellate Court must do so by some proceeding addressed directly to that end; they cannot be reviewed in this Court on an application for a new trial, on the ground that the referee adopted and applied those principles in the adjustment of the accounts.

SURVIVING PARTNER IN REAL PROPERTY. — The surviving member of a partnership owning real property is something more than a mere tenant in common

with the representative of the estate of the deceased partner. He is a trustee for the purpose of winding up the affairs of the firm, and is accountable for the value of the use and occupation of the landed estate of the partnership.

SURVIVING PARTNER AND ADMINISTRATOR OF DECEASED PARTNER.—The surviving partner is bound to account and pay over to the administrator of the deceased partner all the profits of the realty, as well as that of the personalty that rightfully belong to the estate, notwithstanding he may have purchased the interest of the heirs in the estate, or of the community interest of the surviving wife of the deceased partner; and it is for the Probate Court to distribute the estate to the parties entitled.

APPEAL from the District Court of the Third District, Alameda County.

The case is stated in the opinion.

*Sharpstein & Hastings,* for Appellant.

The plaintiff, Smith, is not chargeable for the use and occupation of any portion of the real estate belonging to Smith & Wall in common, nor for any part thereof, subsequent to the death of Wall.

It is not pretended that there was any contract by which Smith ever undertook or agreed to pay anything for such use and occupation. A tenant in common, who possesses the entire premises without any agreement with his co-tenants as to his possession, or any demand on their part, to be allowed to enjoy the same with him, is not liable to account in an action for their use and occupation. (*Pico* v. *Columbet,* 12 Cal. 414; *O'Connor* v. *Corbit,* 3 Cal. 370; *Ramerez* v. *Murray,* 5 Cal. 222; *Wilcox* v. *Wilcox,* 48 Barb. 327; *Dresser* v. *Dresser,* 40 Barb. 300; *Woolever* v. *Knapp,* 18 Barb. 265; *Sargent* v. *Parsons,* 12 Mass. 149; *Nelson's Heirs* v. *Clay's,* 7 J. J. Marshall, 139.)

*Clarke, Carpentier & Leveston,* for Respondents.

We think the relation of tenant in common as to the property of a partnership, cannot exist between a surviving partner and the heirs of a deceased partner.

By operation of law, Smith was entitled to the premises, not as tenant in common, but as surviving partner, to hold them *in trust,* to settle up the partnership affairs, and to

account to the administrator of the estate of Wall. (Probate Act, Sec. 198.

Immediately on the death of a member of a partnership, the partnership is *ipso facto* dissolved, and the surviving partner is vested with the right to the possession of the effects of the partnership, for the purpose of collecting the debts due, and winding up the concern. He is simply a *trustee*, and is not allowed to use the property of his *cestui que trust* for his own use. If he continues the business, he is liable for his deceased partner's share of the profits, or if he uses the effects, is accountable for rents and interest. (Story on Part. p. 343 ; Parsons on Part. p. 441 ; Collyer on Part. Sec. 130 ; *Case et al.* v. *Abeel*, 1 Paige Ch. Rep. 390 ; *Beatty* v. *Wray*, 19 Penn. 519.)

SAWYER, C. J., delivered the opinion of the Court :

The issues in the case on the complaint and cross-complaint of defendant, Walker, were tried by the Court, and the Court found, among other things, that plaintiff and one John Wall were partners in the business of farming, under the firm-name of Smith & Wall, until the death of the latter. "Fourth—That at the time of the said Wall's death, said Wall and the said plaintiff were tenants in common of a tract of land in Alameda County of one hundred and sixty-one and forty one-hundredths acres, and were, *as partners*, the *owners of said land* and a large amount of personal property." * * * "Tenth—That the plaintiff has been in the possession, and had the exclusive use of the one hundred and sixty-one and forty one-hundredths acres of land mentioned in the complaint, and in the fourth finding of fact, and of all and singular the entire property, *real* and *personal*, belonging to the said copartnership of Smith & Wall, since the death of said Wall, and has taken the rents, issues and profits thereof; that the partnership business had never been settled, nor any account rendered by the surviving partner to the legal representatives of Wall; that defendant, Walker, is the legal representative of Wall, entitled to the possession of his estate, and to have the accounting de-

manded of plaintiff in his cross-complaint, and the payment of such sums of money as should be found due from the plaintiff as surviving partner to the estate. It was adjudged accordingly, and referred to S. F. Reynolds to take testimony, state the account and report to the Court. In pursuance of the interlocutory judgment, the referee took testimony, stated the account and reported the sum of $4,890 85 due from Smith to the estate. Plaintiff moved for a new trial of the matters tried by the referee. The Court found an error in one item, and required the amount of this item to be remitted by defendant, Walker, which condition being accepted, and the amount remitted, the motion was denied, and plaintiff appeals from the order denying a new trial."

The first point made is, that the referee erred in charging the plaintiff, Smith, with the rents and use of the one hundred and sixty-one and forty one-hundredths acres of land owned by Smith & Wall, on the ground that one tenant in common is not liable to account to his co-tenant. But the Court had already settled the character in which this land was held. It was not for the referee to review the action of the Court. His duty was to take the account in pursuance of the principles already settled. If there was any error in these particulars, it occurred in the finding of the Court, and no new trial of the issues upon the pleadings had been asked. The Court, as we have seen in the fourth finding, found that the plaintiff and Wall "were, *as partners*, owners of *said land;*" and in the tenth finding, that plaintiff had been "*in the possession* and had the *exclusive use* of the one hundred and sixty-one and forty one-hundredths acres of land mentioned in complaint, and the *fourth* finding of fact, and all and singular, the *entire property*, real and personal, belonging to the said copartnership of Smith & Wall, since the death of said Wall, and *has taken the rents, issues and profits thereof.*" This settled the facts on this point for the purposes of the accounting, and there was nothing left for the referee but to ascertain what the value of the "rents and use" was. Under this finding the plaintiff stood in the same relation to the realty that he did to the personalty of the firm. He was something more than a mere tenant in com-

mon, *as to both.* He was in possession of the whole property of the firm, real and personal, as partnership property, by virtue of his right as surviving partner under Section 198 of the Probate Act. He was a trustee for the purposes of winding up the affairs of the firm, and accountable for the profits of the realty, as well as the personalty, or the value of the use and occupation. It does not fall within the principle of the cases cited with reference to mere tenancies in common. Besides, no question was made upon the correctness of the findings of the Court. No new trial was moved for, or question raised, as to the second point. There is no inconsistency between the finding of the Court and referee. The Court held the action of Mrs. Cochran "utterly null and void," so far as it assumed to affect "heirs and creditors" only. But so far as there was a contract between the plaintiff and Mrs. Cochran, affecting her own individual rights, we see no reason why it is not valid. And, so far as the conveyance is concerned, such was the character of the contract. Upon an examination of all the papers executed by the parties plaintiff and Cochran and wife, at that time, it is evident that both Mrs. Cochran and plaintiff only supposed that she had conveyed her own individual interest in the property. She nowhere purports to contract as administratrix. She contracts in her individual character only. In the contract designated "Exhibit A," she contracts individually and not as administratrix. So, also, in contract designated "Exhibit C," where she recites that she had granted, bargained and sold "all the right, title and interest *of said Lucy H. Cochran, as the surviving widow* of John Wall, deceased, in and to certain lands and premises, consisting of one hundred and sixty-one and forty one-hundredths acres of land," etc., *not as administratrix.* The property was common property, and she had an individual, personal interest in the land as widow, which is here appropriately described for the purpose of designating that interest. There is nothing in this instrument indicating an intention to contract in any other character. The deed of conveyance, "Exhibit L," purports only to be the personal contract of Mrs. Cochran, not a contract in the character of

administratrix, although it purports to convey the land with-out stating her interest in it, as is often the case in convey-ances where parties do not own the whole. But this is the instrument referred to in "Exhibit C," which was executed at the same time and as a part of the same act, where she recites it as conveying her interest as surviving widow. So, also, plaintiff understood that its effect was to convey her personal interest only; for, in the instrument designated "Exhibit B," executed by himself as a part of the same transaction, and in which he agrees to pay the Borel note of $4,000, in consideration of the conveyance, he recites : "Whereas, said Lucy H. Cochran * * * has this day conveyed *her separate interest and estate* in and to certain lands and premises in said Alameda County, containing one hundred and sixty-one and forty one-hundredths acres," etc. So "Exhibit C," also a part of the same transaction, recites that the infant children of John Wall, deceased, have an interest in the land, and the instrument itself is a bond in the penal sum of $2,000, executed by Mrs. Cochran and her husband, by which they obligate themselves to said plaintiff to take certain proceedings in the Probate Court by which he would be able to acquire the interests of said minor children. Thus it was contemplated by both parties that the convey-ance from Mrs. Cochran and her husband only passed her individual, separate interest, and that other proceedings should be taken by means of which the interest of the infant heirs, in whom the remaining interest was vested, should be acquired. Plaintiff obtained the entire · consid-eration for his contract. It was the conveyance of Mrs. Cochran's interest, and the bond of $2,000 to secure her efforts to procure the interest of the minor heirs. The bond he received, and this personal obligation he relied on. He had no idea that he had procured the title of the infant heirs. If he fails to get the title of the heirs he has the remedy for which he stipulated—his bond. He has, there-fore, got his consideration for the payments which he agreed to make in this instrument, including the Borel note of $4,000, and he was not entitled to have it allowed again by

the referee in the settlement of his partnership accounts. The referee, therefore, properly refused to allow it.

There can be no doubt, from the testimony, that there were in the hands of plaintiff, Smith, four thousand three hundred and sixty-two sacks of wheat belonging to the firm, produced from some source; for in the account of Ellerhorst & Co. with Wall & Smith, the firm is credited with that number of sacks between September 5th and December 30th, 1862. This account was put in evidence by plaintiff himself. It can make no difference whether it was all the product of the harvest of the summer of 1862 or part of that harvest and a part of the product of prior years. There was so much wheat credited to the firm account at that time by the commission merchants of the firm, who sold the wheat for them. We need not look for further testimony, then, to support this part of the finding of the referee. It is claimed that the value of this wheat should not be charged to plaintiff, because the account of Ellerhorst & Co. is with the firm, and not with him. But he represented the firm as surviving partner. There was no other, at the time, in the firm. It is claimed that only the item in the account of Ellerhorst & Co. charged as "cash," without explanation, should be charged to plaintiff, because Teitman testified that "the charge of cash in this account was paid to *Smith;* this is so in all accounts, unless otherwise explained therein;" and it seems to be argued that the other items, such as "cash, Captain Roberts," "cash to Myers," "cash for sacks," etc., must be taken as paid on firm indebtedness, and, therefore, as not going to plaintiff. But these payments could only be made by the authority and direction of plaintiff, the surviving partner. Ellerhorst & Co. could only know that they went to firm uses, because so stated by plaintiff. It was for him to show that they, in fact, did pertain to the business of the firm. It must have been under his direction and supervision that the payments were made. They could be made under no other authority, and it was for him to show the application. The account simply shows the amount of grain, the price at which it was sold, and that the money was paid out in some way under the direction of the

representative of the firm, and the account between the firm and Ellerhorst & Co. balanced. And plaintiff, as surviving partner, was the only representative of the firm. The referee has found that, in addition to sums paid on promissory notes, particularly specified in the finding, plaintiff paid out on debts and just claims against the partnership, to different creditors, and at different times, the sum of $6,185 42. He does not inform us of the items that go to make up this aggregate, or the exact process by which he attained this result, and we are unable, from the record, to exactly trace it. But aside from this account of Ellerhorst & Co., the evidence is loose, and the referee might have rejected some, and allowed other items not embraced in this account, and we are unable to determine which were allowed and which rejected. The account of Ellerhorst & Co. seems, however, to have been balanced on April 10, 1862, a short time before Wall's death. From that time on, deducting the items designated "cash" unexplained, which appellant admits should be charged against plaintiff, it will be found that the referee has credited the plaintiff enough to cover all the balance of the items of that account, and some thousands over applicable to other matters. We have no doubt plaintiff was credited with all those items in that account. We are unable to see, from the record, that the referee has not credited plaintiff with every item paid or expended on behalf of the firm. It would be impossible for us to state the account anew from the record without having heard the witnesses testify.

As to the fifth point, the judgment for one half of the net proceeds in favor of the administrator is correct. He represents the *entire estate*. When recovered, the Probate Court, after paying the expenses of administration and the debts of the estate, if any there are, will distribute the estate to the parties entitled. If plaintiff has acquired Mrs. Cochran's interest in the property, by virtue of the contract with her, as respondent concedes that he has, it will doubtless be distributed to him, upon a proper showing, under the direction of the Probate Court, when the amount of that interest is finally ascertained. Till then, the administrator is entitled

to the possession and control of the entire estate.   Till he recovers the whole estate, the amount to be distributed cannot be known.

Although, from the loose manner in which the evidence is presented in the record, the exact amount which should be credited to plaintiff as paid on partnership account, does not very clearly appear otherwise than by the findings of the referee, we find nothing to justify us in disturbing the account as stated by him.

Judgment and order affirmed