[Civ. No. 19045.   Second Dist., Div. One.   Jan. 16, 1953.]

WALTER METZENBAUM, Respondent, v. MURRAY
METZENBAUM et al., Appellants.

Milton A. Krug for Appellants.

Newell & Chester and Robert M. Newell for Respondent.

PATROSSO, J. pro tem.—This is an appeal by Murray Metzenbaum as liquidating partner of two dissolved partnerships (with only one of which we are concerned here) from an order denying him reimbursement for attorneys' fees alleged to have been incurred by him in behalf of said dissolved firm.

All of the parties involved are members of the same family. The respondent, Walter Metzenbaum and Rose Metzenbaum are the parents of the appellant Murray Metzenbaum and Fanchon Metzenbaum, and they will sometimes hereinafter be referred to by their given names.

In May, 1943, respondent and appellant entered into an oral agreement of partnership for an indefinite period for the purpose of acquiring and selling oil and gas royalties and leases. This firm was dissolved by written notice from appellant to respondent in September, 1943, and by agreement appellant was appointed and became the liquidating partner of the dissolved firm on or about November 5, 1944. Among the assets of the dissolved firm were two landowners' royalties, one known as the Oulton royalty and the other as

the Rozier or Surfluh royalty. In the course of liquidation, with the consent and authorization of respondent, the appellant sold a portion of the Surfluh royalty and pledged the remaining partnership interest therein to the Bank of America as security for a loan of approximately $6,000. The money realized from the sale and loan was used to discharge debts of the dissolved firm.

Subsequently and during the course of liquidation Rose and Fanchon, individually, and through respondent as trustee for Fanchon and as attorney for both Rose and Fanchon, asserted that neither the Surfluh nor the Oulton royalties was an asset of the dissolved firm but that the former was owned one-half by Fanchon and one-half by appellant, individually, and that the Oulton royalty was owned one-fourth by Fanchon, one-fourth by Rose, and one-half by appellant, individually. In April, 1947, respondent, as trustee for Fanchon and as her attorney, filed an action against the appellant and others in the Superior Court in and for the County of Los Angeles alleging that one-half of the Surfluh royalty belonged to her (Fanchon) and that the sale of a portion thereof to pay obligations of the dissolved firm was wrongful. In the original and first amended complaint in this action respondent was the sole plaintiff, but in the second amended complaint both respondent and Fanchon were named as plaintiffs. A demurrer to the second amended complaint was sustained with leave to amend and upon failure of the plaintiffs to so amend, judgment was entered dismissing the action. From this judgment an appeal was taken and the judgment was affirmed. (*Metzenbaum* v. *Metzenbaum*, 86 Cal. App.2d 750 [195 P.2d 492].) This action will hereinafter be referred to as the Fanchon suit.

Prior to the filing of the Fanchon suit last mentioned, respondent instituted the present action wherein he sought a dissolution of the partnership and an accounting. On July 25, 1947, following the filing of the Fanchon suit, the appellant filed a cross-complaint naming as defendants, among others, Rose and Fanchon and seeking therein to quiet title to the Oulton and Surfluh royalties in the dissolved firm. On the trial of the issues raised by the cross-complaint Fanchon, Rose and respondent claimed and contended that said royalties were not assets of the dissolved firm, but that one-half of the Surfluh royalty was owned by Fanchon and that one-half of the Oulton royalty was owned equally by Rose and Fanchon. Judgment was entered in favor of the appel-

lant, finding that both of said royalties were properties of the dissolved firm; that the firm had been dissolved, and confirmed appellant as liquidating partner to complete the winding up of the firm. Upon appeal this judgment too was affirmed (*Metzenbaum* v. *Metzenbaum*, 96 Cal.App.2d 197 [214 P.2d 603]), and appellant has since continued to discharge his duties as liquidating partner subject to the continuing supervision of the superior court.

Following the affirmance of the judgment last mentioned, appellant as such liquidating partner, filed what is entitled ''Petition to determine attorneys fees and for leave to pay same'' wherein he requested the court to fix and make an allowance to him for the attorneys' fees which he incurred (1) in the defense of the Fanchon suit; (2) in the trial of the issues raised by his cross-complaint in the instant case with respect to the title to the Oulton and Surfluh royalties, and (3) upon a previous hearing of the report of appellant as liquidating partner and respondent's objections thereto insofar as such hearing related to the allowance to appellant of attorneys' fees incurred by him in the defense of a certain action instituted by Wood and Callahan against the dissolved firm, to which detailed reference will hereafter be made. Upon the hearing of the petition the trial court refused to make any allowance to appellant for attorneys' fees incurred in any of the matters mentioned, and it is from this order that the present appeal is taken.

The trial court was seemingly of the view that the services rendered by counsel for the appellant in each of the foregoing matters were for his sole benefit and hence should not be charged against the assets of the dissolved firm. We first direct our attention to the first two matters mentioned above with the view of determining whether the trial court's conclusion with respect thereto was correct.

At the outset it is necessary to consider the relationship which a liquidating partner bears to his former partner, and his duties with respect to the assets of the firm committed to his care. ■ The prevailing, if not unanimous view, appears to be that a surviving or liquidating partner, if not a trustee in the strict sense, is at least a quasi trustee for the interested persons (68 C.J.S., p. 767; *Adams* v. *Carmony*, 44 Ind.App. 291 [87 N.E. 708, 709]; *Gilmore* v. *Ham*, 142 N.Y. 1 [36 N.E. 826, 827, 40 Am.St.Rep. 554]; *King* v. *Leighton*, 100 N.Y. 386 [3 N.E. 594, 597]; *Stephens* v. *Orman*, 10 Fla. 9, 101). Our own Supreme Court has so referred to a surviving

partner (*Smith* v. *Walker*, 38 Cal. 385, 389 [99 Am.Dec. 415]).

In 68 Corpus Juris Secundun, page 864, it is said:

"It is competent for partners to provide, either in their partnership agreement or in the agreement for dissolution, that one or more of the members shall have the sole right of administering the firm's affairs. When such power has been conferred, partners other than the members so authorized have no right to participate in the settlement of affairs, and third persons who, with notice of the arrangement, deal with partners not intrusted with the administration do so subject to the rights of other partners. According to some cases the partner so designated to administer the firm affairs holds a position analogous to that of a surviving partner.

"*Nature of relation between former partners and duties of liquidating partner.* While partners engaged in administering the affairs of the dissolved firm are not regarded as trustees for each other in the strict sense, there are elements of trust in the relationship, and such relationship is frequently regarded, or referred to, as a trust or fiduciary one, at least in respect of firm property which is in the possession of a former partner, as discussed infra section 363. A partner charged with the duty of liquidating the business of the firm is required to act in such a manner as to conserve the interests of all of the members and is obliged to exercise good faith. Hence he must be diligent in the performance of his tasks and must settle the firm's affairs within a reasonable time."

By analogy, therefore, the questions here presented are to be determined in the light of the legal and equitable principles governing the trust relationship. ▉ It is axiomatic that where litigation is necessary for the preservation of the trust, it is both the right and duty of the trustee to employ counsel in the prosecution or defense thereof, and the trustee is entitled to reimbursement for his expenditures out of the trust fund. This, of course, necessarily assumes that the litigation is for the benefit of the trust estate, for, if not, the rule is otherwise. (*Estate of Duffill,* 188 Cal. 536, 554 [206 P. 42]; *Dingwell* v. *Seymour,* 91 Cal.App. 483, 513 [267 P. 327]; Civ. Code, § 2273; Pomeroy's Equity Jurisprudence (5th ed.), § 1085).

▉ We can conceive of no higher duty resting upon a trustee than that of defending against adverse claims to trust assets. Indeed, failure to do so without sufficient justification would subject the trustee to liability for any loss resulting from such failure upon his part. True, the appellant as

liquidating partner, like a trustee who is also a beneficiary of the trust, derived some personal benefit in successfully defending against the adverse claims to the partnership assets in question, as thereby his proportionate share of the net assets remaining after the payment of debts was increased. This, however, is but a fortuitous circumstance resulting from the performance of a fiduciary duty which he owed to the trust, and whereby valuable assets were preserved for the benefit of all persons interested therein, including the respondent. While respondent protests vigorously against any allowance to appellant in reimbursement of the attorneys' fees incurred in the defense of the dissolved firm's title to the royalties in question, we have no doubt that, if such a claim had been advanced by persons other than members of his own family with his consent and active cooperation, he would have been the first to complain of appellant's failure to defend against the same. Hence, we conclude that the trial court erred in its ruling that appellant was not entitled to reimbursement for attorneys' fees in a reasonable amount incurred by him in the defense of the Fanchon suit.

We believe that the same is true with respect to attorneys' fees incurred in the trial of the issues raised by the appellants cross-complaint in the present action insofar as they related to the title to the two royalties in question. Respondent having instituted the present action for a dissolution of the partnership and an accounting by the filing of a complaint in which, while purporting to set forth the assets of the partnership, he omitted any reference to the two royalties in question, the appellant, having been previously advised by respondent that an interest therein was claimed by others, namely Rose and Fanchon, was under the impelling necessity of securing an adjudication of such adverse claims, not only for his own protection as liquidating partner but in order to discharge his duty to protect and preserve the partnership assets in his possession and under his control. Indeed, failure to do so might have resulted in a judgment which would have constituted an adjudication that one-half of each of said royalties did not constitute assets of the dissolved partnership. Contrary to the claim of respondent, the present action was something "more than a suit between partners." It was one wherein the respondent in effect asserted that the royalties in question or some interest therein, were not partnership assts but that title to a portion thereof was vested in others. This claim on behalf of Fanchon and Rose was no less

adverse to the interests of the dissolved firm because of the fact that it was asserted through and with the connivance and cooperation of a former partner, nor would this operate to constitute the controversy one between partners. The case of *Salmina* v. *Juri,* 96 Cal. 418 [31 P. 365], upon which respondent places principal if not sole reliance did not, as here, involve the assertion of an adverse claim to assets of a dissolved partnership by *third persons* but rather a controversy between a surviving partner and the personal representative of his deceased partner as to whether a particular parcel of land constituted an asset of the former partnership. Hence it is without application here.

In order to avoid any misunderstanding, however, it must be understood that the allowance to be made to appellant for attorneys' fees in the instant case is confined to the services rendered therein only insofar as they are related to the establishment of the dissolved firm's title to the Oulton and Surfluh royalties.

Different considerations, however, are applicable to appellant's claim to reimbursement for attorneys' fees incurred by him upon the previous hearing involving the attorneys' fees incurred in defense of the action instituted by Wood and Callahan. That action was brought against the partnership attacking its title to the Oulton royalty. The action was successfully defended by appellant, and thereafter appellant, in a current account, claimed credits in the sum of $11,000 as and for attorneys' fees paid by him in the defense thereof. Objections to the account were interposed by respondent, and upon the hearing thereof before Judge Palmer the latter made an allowance to appellant therefor in the sum of $7,500, resulting in surcharging appellant's account in the sum of $3,500. In the instant proceeding, appellant sought an additional allowance for attorneys' fees incurred by him in connection with the hearing before Judge Palmer upon the matter of the attorneys' fees in the Wood and Callahan case. As previously indicated, the trial court denied any allowance therefor, and with this action we are in accord.

Appellant has cited no authority in support of his claim in this regard and we have found none. ▌ Perhaps no better answer can be made thereto than that returned by the Supreme Court of Minnesota to a similar contention, as follows (*Re Drake,* 195 Minn. 464 [263 N.W. 439, 101 A.L.R. 801, 805]): "To say to a trust beneficiary that, even if he

succeeds in having his trustee's account surcharged to the amount of $2,500, he must nevertheless pay the trustee's attorneys' fees and the trustee's fees for contesting the allowance of such a surcharge, is unreasonable. In effect it amounts to this: That a beneficiary, who has cause to have the account of his trustee surcharged in a substantial amount, can be called upon by the trustee to face the prospect that, if he wants to litigate the question of the trustee's liability, he will have to pay not only his own but the trustee's attorneys' fees and the trustee's fees for contesting the claim, even if the beneficiary succeeds in the action. The $600 allowed for the services of the trustee and his attorneys for conducting the defense against the surcharge should not be allowed.

"The plaintiff beneficiary had the right to appear and be heard in opposition to the allowance of the trustee's account. The trustee, not the beneficiary, was the proponent and brought the matter into court. The beneficiary had the right to have the account examined and surcharged as to any item or items therein improperly charged to the trust estate. His efforts in that direction were for the benefit of the trust estate."

The foregoing also serves to dispose in part of appellant's final complaint of the trial court's refusal to allow attorneys' fees for services rendered by his counsel upon the hearing of the present application for attorneys' fees. An additional reason, however, is that during the early stages of the hearing the trial judge inquired of counsel for appellant while testifying as a witness: "You do not anticipate making any claim for attorneys fees in this hearing?" to which counsel replied in the negative. However, counsel now undertakes to say that this statement was made because at an earlier time the trial court had stated that the hearing was to be confined to the matters set forth in the appellant's petition. The subsequent statement of counsel, however, that attorneys' fees were not being requested in connection with the hearing which resulted in the order appealed from was unequivocal, and the trial court was justified in treating the same as a waiver of any such fees if it be assumed that appellant was otherwise entitled thereto.

For the reasons stated, the order appealed from is reversed insofar as it denies any allowance for attorneys' fees incurred in the defense of the Fanchon suit and in connection with the trial of the issues raised by the cross-complaint herein with respect to the title to the two royalties in question,

and the cause is remanded for a further hearing with respect thereto. In other particulars the order is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied February 10, 1953, and the following opinion was then rendered:

THE COURT.—In their petition for rehearing respondents complain that in our opinion no mention is made of the fact that in the complaint filed in the instant action by respondent Walter Metzenbaum it was alleged that certain oil and gas leases referred to as the Culver City leases were the property of the partnership and that the allegation was controverted by appellant. The obvious reason for the absence of any reference to this in our opinion is that this fact is wholly immaterial to any question presented upon this appeal. Appellant did not contend and this court did not declare that he was entitled to be reimbursed for attorneys' fees incurred in litigating this issue or any other issue except that relating to the Oulton and Surfluh royalties.

It is also asserted that the allegations with respect to the partnership's ownership of the royalties last mentioned contained in the cross-complaint against Fanchon and Rose were identical to those contained in appellant's answer to the complaint of Walter herein. ■ There is, however, no significance to this, for it is apparent that an adjudication of this issue as between appellant and Walter would not be binding upon the adverse claimants (Fanchon and Rose) unless they were brought in as parties.

It is further said that our opinion omits mention of the fact "that all of the children, including Fanchon, filed a disclaimer to Murray's cross-complaint by which they disclaimed any interest in the partnership assets." This apparently refers to some equivocal language in the answer of the cross-defendant Fanchon, which did not escape our attention. The answer, however, denies that the royalties in question were partnership assets. Moreover, that Fanchon did not consider that she had, by her answer to appellant's cross-complaint, disclaimed any interest in the royalties in question is made evident by the fact (1) that, as evidenced by the findings, she participated throughout the trial and appealed from the judgment rendered against her upon appellant's cross-complaint; (2) that her appeal from the judgment rendered against her in the Fanchon suit was pending and undetermined

during the trial of the instant case; and (3) that after the entry of the interlocutory judgment herein she filed still another action (584906) wherein she asserted her ownership to one-half of the Surfluh royalty, by reason of which she was by the final decree herein restrained from further prosecution of said action. ■ The facts just recited are made to appear by the trial court's findings in the proceeding which resulted in the order appealed from, and respondents are necessarily concluded thereby. (*Kern Oil Co.* v. *Crawford,* 143 Cal. 298, 302 [76 P. 1111, 3 L.R.A.N.S. 993] ; *Billings* v. *Farm Dev. Co.,* 74 Cal.App. 254, 263 [240 P. 298] ; 2 Cal.Jur., p. 839, § 492.)

Respondents also assert that the trial court *could* have found that the services of appellant's attorneys were not increased by virtue of the cross-complaint. The answer is that the court did *not* so find.

■ Nor is it of any moment, as respondents suggest, that the Fanchon suit was directed against appellant alone. Inasmuch as the title to the royalties stood in his name alone and, as liquidating partner, he was collecting the revenues therefrom, he was the only necessary party defendant in an action whereby Fanchon, as plaintiff, undertook to establish an interest therein adverse to the partnership. Appellant's duty to defend the title of the partnership thereto was no less because he was not described in the complaint as liquidating partner.

Finally, respondents say that "the trial court determined that there was no additional work" involved by reason of the trial of the issue raised by the cross-complaint as to the partnership's ownership of the royalties in question. This is a palpable misstatement, for the trial court made no such finding. Equally erroneous is the statement in the petition to the effect that appellant's "attorneys made no contention nor did they prove that the filing of the cross-complaint involved any additional effort." The reporter's transcript reveals that Mr. Krug (one of appellant's attorneys) testified that approximately one-half of the time spent in the trial, which lasted 13 or 14 days, was devoted to the determination of the title to the two royalties in question and that one-third to one-half of the time involved in the appeal from the judgment therein was devoted to the same matter.

Respondent's petition for a hearing by the Supreme Court was denied March 16, 1953. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.