[Civ. No. 21271. Second Dist., Div. Two. May 17, 1956.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Executor, etc., Plaintiff and Appellant, v. LONG BEACH FEDERAL SAVINGS AND LOAN ASSOCIATION (a Corporation) et al., Respondents; EASTSIDE CHRISTIAN CHURCH OF LONG BEACH (a Corporation), Cross-Complainant and Appellant.

Johnson & Johnson and Robert A. Wenke for Plaintiff and Appellant.

Houser & Beam and J. Everett Houser for Cross-Complainant and Appellant.

Charles K. Chapman, Billy D. Williams, Buchalter, Nemer & Fields and Murray M. Fields for Respondents.

MOORE, P. J.—The Bank of America as executor appeals from a judgment denying its ownership or interest in certain notes and trust deeds, adjudging that Long Beach Federal Savings and Loan Association, a corporation, holds such securities in trust for the individual defendants, and that the corporate defendant has properly accounted for the earnings of the securities held by it for the several individual defendants.

Decedent, Minnie L. Hanssen, died on September 12, 1952. In the six weeks preceding her death, she made three wills. No question of her mental capacity, understanding of the transactions, or intent is involved. Her first will was made July 31, 1952. It made bequests to her blood sister, niece

and nephew of $18,000 and left to her charities, Sunshine Mission and Eastside Christian Church of Long Beach, bequests totaling $11,000. Her second will of August 16, 1952, revoked all former wills and contains no bequests to her sister, niece or nephew, or to the charities involved in this litigation. Accompanying this holographic document, however, was a letter which read in part: "I think it is the wisest thing to do to assign some of my trust deeds and my home as joint heirs with whom I wish to be the beneficiarys. This I have done and I enclose my new and shorter Will. [That of August 16th.]

Yours Truly
Minnie L. Hanssen      (over

P.S. Mr. Johnson will you please return the letter to me that I left at your office for the Bank of America Trust Co. They have no use for the letter as my will now stands. All of my loan papers are at the Long Beach Federal Savings & Loan Association or will be next week. Thank you kindly.

Minnie L. Hanssen."

The third will dated August 30, 1952, was also holographic but did not revoke former wills. It merely directed that "All the rest, residue and remainder of my estate I give devise and bequeath in equal shares to the American Red Cross of Long Beach, Calif. Chapter, The National Benevolent Association of the Christian Churches . . . The Kate Crutcher Workers of the Childrens Hospital . . . and/or the Girl Scouts of Long Beach, Calif." Said will contained no bequests to her blood relatives; sister, niece or nephew, or to her favorite charities.

Three weeks prior to decedent's passing, she delivered to Long Beach Federal 17 notes and deeds of trust, naming as joint tenants of these trusts, her blood sister, niece and nephew and her charities. All 17 of decedent's notes and deeds of trust were signed by her and her signature in every instance was acknowledged by a notary except in one instance where her signature was by accident omitted. Said notes and trust deeds were delivered to respondent Long Beach Federal about three weeks before her death. The trial court found from the evidence that decedent's will had been admitted to probate and a contest is pending; that decedent as sole owner conveyed to herself and the several defendants 16 separate notes and trust deeds as joint tenants with herself; that each assignment was in writing, duly acknowledged; that all were by her delivered to respondent Long Beach Federal; that she thereby created a trust, of which each joint tenant is a bene-

ficiary subject to a life estate reserved in herself; that deceased and Long Beach Federal were the trustees; that upon the death of Mrs. Hanssen, respondents as beneficiaries of such trust were entitled to receive the notes and trust deeds and all proceeds paid thereon.

Appellant contends that there was (1) no voluntary intent on the part of the donor to make a gift; (2) no delivery either actual or symbolical amounting to a transfer of title and (3) no complete divestment of control by the donor. For these reasons, it is argued, the notes and trust deeds should pass with the estate into the control of the executor.

Appellant contends also that respondents must prove that decedent executed the gifts or assignments during her lifetime. While the executor concedes that there was abundant evidence of decedent's testamentary intent in attempting to make the assignments, yet it contends that respondents obtained no title to such notes and trust deeds during decedent's lifetime or at her death. The findings are supported not only by the three wills of decedent, but also by her letter to her attorney whereby she wished "to assign my trust deeds . . . as joint heirs with whom I wish to be the beneficiarys." By that expression she emphasized both the knowledge and intent that she was creating trusts with herself, her nearest blood relatives and her favorite charities as beneficiaries. Also, she made it clear that the creation of the trusts was an accomplished fact and to make certain that her chosen trustee might not be shelved, she added: "All of my loan papers are at the Long Beach Federal Savings & Loan Association or will be next week." Furthermore, that intent is evidenced by the 13 endorsements on the notes, the 16 assignments of trust deeds and the 16 instructions to Long Beach Federal concerning its duties as depositary of the written instruments, or a total of almost fifty separately signed instruments executed and acknowledged by the trustor at a time when she knew that her life was fast ebbing and that she must so act as to place the corpus of the trust where it would reach the beneficiaries without the expense of probate. During that period, she informed Essie B. West, President of Girls Town and Sunshine Mission that "she was making a trust deed so I would have immediate possession of some trust deeds and she had put it in my name . . . She wanted it to go to Sunshine Mission and some to Girls Town . . . wanted it to go both places; and that way I wouldn't have to transfer it."

Also, in a conversation with Elmo R. Jordan, chairman of

the official board of the Eastside Christian Church of Long Beach, hereinafter referred to as "the Church," two days prior to her death, she said: "I have made provision for the Eastside Christian Church."

She told Mr. Privett in the presence of Cora Zoeller who helped prepare the assignments that she wished to transfer these deeds of trust to her several relatives and asked him whether "it would be possible to do that and thereby avoid what she felt to be unnecessary expense of probate."

The facts of the case at bar are entirely similar to those in *American Bible Soc.* v. *Mortgage Guar. Co.*, 217 Cal. 9 [17 P.2d 105]. There objection was made that (1) a valid joint tenancy had not been created because a corporation was one of the joint tenants; (2) because of retention of power to revoke during the decedent's lifetime; and (3) because of non-delivery of the mortgage certificates. The court stated on page 13: "where funds have been deposited by one person with the intent to pass a present proprietary interest therein to another jointly with himself with right of survivorship, and the purpose fails, that is, the gift is incomplete by reason of some technicality in the law, and where the essential elements of a trust are established, the manifest intention of the donor may be sustained through the agency of a trust." It would be difficult to find a decision in which the facts more nearly parallel those at bar. As conceded by appellants, the proper intent was present on the part of the deceased; the court states in American Bible Society, *supra*, page 15, that such intent must be given effect as the declaration of a trust for the benefit of respondents as to the whole of the assigned notes and trust deeds. Civil Code, section 683[1], expressly authorizes the method used by decedent in establishing the joint tenancies. Civil Code, section 1828, expressly authorizes the joint deposit in the name of two people making such deposit deliverable to either or to the survivor in due course of business. In addition to the writings of decedent, the quoted testimony of the two witnesses with reference to the aims of the testatrix and authoress of the trust show that some beneficiaries were notified that the trust deeds were being created for their immediate benefit.

[1]Civil Code, section 683. "A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or by transfer from a sole owner to himself and others, or from tenants in common to themselves, or to themselves and others. . . ." [Stats. 1935, p. 912.]

■ Where one deposits money in her own name and that of another jointly with the intention of enabling the other party to draw money after the death of the depositor, a valid trust is created in favor of the other person as beneficiary and the validity of that trust is not negatived by reason of the fact that the depositor retains power to withdraw the deposit during her lifetime. (*Randall* v. *Bank of America,* 48 Cal.App.2d 249, 253 [119 P.2d 754].)

In *Drinkhouse* v. *German Sav. & Loan Soc.,* 17 Cal.App. 162, 168 [118 P. 953], the appellant contended that the deceased had never made a formal declaration of trust or parted with control of the property in question and it was further urged that respondent had never formally accepted the trust. The court held that inasmuch as the subject of the trust was personal property, it was not necessary that technical and precise formalities should be used; that any words or acts of the trustor and trustee which indicate with reasonable certainty an intention on the part of the trustor to create a trust, the subject, purpose and beneficiary of the trust and the acceptance of the trust by the trustee are all that is necessary. (Civ. Code, §§ 2221, 2222.) It is obvious from the facts and circumstances of the case that there was intended to be by all parties involved, a perfected trust.

Appellant contends that a corporation cannot hold property in joint tenancy with a natural person because there can be no reciprocity of survivorship between them. (*Dewitt* v. *City of San Francisco,* 2 Cal. 289.) ■ This was recognized as the common law rule in the American Bible Society case, *supra,* but the court found it unnecessary to decide whether it has been changed in this state (p. 13), for it held that a valid trust had been created for the benefit of the donor and the corporation and thereby necessarily held a trust in joint tenancy could be created for the benefit of a corporation. Such is the case at bar.

While the Civil Code defines a joint interest as one owned by two or more persons in equal shares and is declared to be a joint tenancy (Civ. Code, § 683), yet it is noted that the section does not exclude a corporation from the category of such ''persons'' as may hold a joint tenancy while sections 14 and 2132b define person as including a corporation.

Appellant contends that one of the assignments was unsigned and that there was no evidence that the omission of the signature in that instance was accidental; that therefore, that assignment must fail. The court was confronted with

sufficient evidence to warrant the conclusion that such omission of signature was accidental. The finding was that "at the same time Minnie L. Hanssen executed, acknowledged and delivered a separate assignment of said deed of trust last above described. Both the endorsement of said note and said deed of trust were signed by the said Minnie L. Hanssen by her personal signature; however, said Minnie L. Hanssen accidentally omitted signing, either the endorsement on the back of the note, or the separate assignment of deed of trust as to Number 1 above." It was not an unreasonable inference that the absence of decedent's signature from the assignment to Eastside Christian Church was accidental. ■ Furthermore, a valid trust of personal property may be created by parol; it need not be in writing; merely the ascertainable intention is all that is necessary. (*Hardison* v. *Corbett*, 55 Cal.App.2d 310, 317 [130 P.2d 226]; *Booth* v. *Oakland Bank of Sav.*, 122 Cal. 19, 24 [54 P. 370]; *Drinkhouse* v. *German Sav. & Loan Soc.*, *supra*, 17 Cal.App. 162, 168.) It must therefore be concluded that decedent properly set up a trust and that there was ample evidence to support the findings of the trial court.

The church appeals the award of attorney's fees to Long Beach Federal Savings as the trustee, contending in effect that (1) Eastside Christian Church actively defended its own property; (2) that this was not an express trust and that an involuntary trustee has no right or claim to compensation or expenses, and (3) Long Beach Federal rendered a disservice to the church rather than a benefit.

■ The law governing the administration of trusts is that a trustee not only has the right, but it is his duty, whenever necessary to the proper administration, preservation and execution of the trust or to its defense, to employ counsel and that such counsel be paid for the service necessarily rendered out of the trust estate. Failure of the trustee to take such action without justification would impose a liability upon such trustee for any loss resulting to the estate from his failure wisely so to act. (*Estate of Duffill*, 188 Cal. 536, 555 [206 P. 42]; *Metzenbaum* v. *Metzenbaum*, 115 Cal.App.2d 395, 402 [252 P.2d 31, 966].)

If such is the rule for the trustee who has actively participated in the creation of the trust and the naming of himself as trustee, then how much more should it apply to a person or corporation that has been "conscripted" to serve as trustee. The execution of her several wills and the num-

erous conveyances and instructions, made controversy almost a certainty. Responsibility for the exercise of alertness and good judgment was cast upon respondent Long Beach Federal in order to guard the wealth entrusted to it. Consequently, it cannot with reason be denied that someone was obliged to act for the preservation of the estate and that one was the respondent Long Beach Federal. (*Dingwell* v. *Seymour*, 91 Cal.App. 483, 513, 515 [267 P. 327].) Deceased selected respondent corporation "as trustee, to hold her property in trust."

The "trustee has a right, whenever necessary to the proper administration, preservation, and execution of the trust and the prosecution or defense of an action, to employ counsel and to be reimbursed from the trust estate for whatever sums he has paid for the services of such counsel. The rule is applicable even though the *cestui que trust* employed counsel to represent the same interests, and although, to a certain extent, the private and personal interests of the trustee may also be involved in the litigation." (*Estate of Duffill*, 188 Cal. 536, 555 [206 P. 42]; *Metzenbaum* v. *Metzenbaum*, 115 Cal. App.2d 395, 399 [252 P.2d 31, 966]; *Dingwell* v. *Seymour*, *supra*, p. 513.)

The mere fact that the beneficiaries also employ counsel in no way relieves or mitigates the duty of the trustee to hire counsel, and because of this duty, to "be compensated for the entire service." The court found that this was a voluntary trust "arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another" (Civ. Code, § 2216), and not an involuntary trust created by operation of law as defined by Civil Code, section 2217. Further, Eastside Christian Church, in its verified cross-complaint, stated that "Minnie L. Hanssen . . . selected and appointed cross-defendant, Long Beach Federal Savings & Loan Association, a corporation, as trustee, to hold said property in trust." The church cannot now come before this court and for the sake of $181.99 state that the trust was created by law and not Minnie L. Hanssen.

Finally, the church presented to the trial court the issue upon conflicting evidence as to whether it was harmed by Long Beach Federal, and the trial court found in favor of the latter. This court will not upset a judgment supported by substantial facts as determined by the trial court.

The trial court correctly held that the church must pay its share of the trustee's attorney fees and correctly allowed

Long Beach Federal to counter-designate an adequate record on the church's "judgment role appeal" in which the church makes repeated references to the reporter's transcript.

The final judgment is affirmed.

Fox, J., and Ashburn, J., concurred.