In re TRUST ESTATE OF WILLARD SAULSBURY, Deceased.

*New Castle, September 21, 1967.*

*George Tyler Coulson* and *William S. Megonigal, Jr.,* Wilmington, for petitioners.

*Henry R. Horsey,* Dover, *amicus curiae* and guardian *ad litem.*

*Hugh L. Corroon,* of Berl, Potter & Anderson, Wilmington, and Hogan & Hartson, of Washington, D. C., for The Riggs National Bank of Washington, D. C.

MARVEL, Vice Chancellor: Willard Saulsbury died in 1927, leaving a last will and testament which together with its codicil disposed of the bulk of his estate by creating a trust after making a number of bequests to numerous Delaware relatives and charities following a life estate to his wife. He also excluded his Kent County farms from the trust by devising them to a nephew and his son for life and upon failure of issue of the son to the State of Delaware. He appointed trustees as follows:

"* * * I appoint my friends Hugh M. Morris and Victor B. Woolley, Trustees of the property and estate hereby given and devised in trust and direct that upon the decease of either one of them The Washington Loan and Trust Company of Washington, D. C., of which I am now (1926) a director, become and be a co-trustee with the survivor of them."

On February 22, 1945, Victor B. Woolley, trustee, died, and on March 23, 1945, The Washington Loan and Trust Company filed in this Court its acceptance, as of February 22, 1945, of the office of co-trustee of the Saulsbury trust. On the preceding day, namely March 22, 1945, such co-trustee had executed a "Certificate of Registration of Foreign Corporation" * * * "in order to qualify itself to act as such trustee and for no other purpose * * *". Such document set forth the bank's assets and liabilities and appointed Corporation Trust Company "* * * as its authorized agent in the State of Delaware upon whom service of process may be made * * *".

On May 26, 1945, an agreement was entered into between The Washington Loan and Trust Company and Hugh M. Morris as trustees, and Wilmington Trust Company as agent, under the terms of which designated.securities were turned over to the custody of the Wilmington Trust Company to be held in safe-keeping by that corporation subject to the written instructions of the trustees. Such agreement specifically provided that it "* * * shall be binding upon Principals, their successors or assigns."

On October 1, 1954, The Washington Loan and Trust Company, a banking corporation organized under the laws of the United States relating to the District of Columbia, was consolidated with The Riggs National Bank of Washington, D. C., a national banking association organized under the laws of the United States, pursuant to the provisions of then 12 *U.S.C.* § 34a, and on December 9, 1954, Riggs executed a so-called "Certificate of Withdrawal of a Foreign Corporation", which after reciting that "* * * by virtue of 12 *U.S.C.A.,* § 34a, the corporate existence, rights, franchises and interests of The Washington Loan and Trust Company merged into and continued in The Riggs National Bank of Washington, D. C." and that "* * * both of the consolidated corporations are qualified to do business in the State of Delaware * * *", went on to provide "* * * Fifth: that

The Riggs National Bank of Washington, D. C. hereby withdraws The Washington Loan and Trust Company from the State of Delaware and surrenders the authority of said corporation to do business therein * * *". On December 14, 1954, the Secretary of State of Delaware entered a "Certificate in Relation to Foreign Corporations" which certified that "* * * the authority of the said 'The Washington Loan and Trust Company', is hereby revoked and its license to do business in the State of Delaware is hereby cancelled". Prior to such action, namely on November 29, 1954, the Secretary of State of Delaware had executed a certificate to the effect that having submitted a sworn statement of its assets and liabilities and paid stipulated State fees that Riggs "* * * is therefore entitled to to business in this State * * *" provided that it should not be deemed to have the power "* * * of discounting bills, notes, or other evidences of debt, of receiving deposits, * * *" or otherwise engaging in customary banking practices.

Thereafter, on March 22, 1955, the agency agreement originally entered into by The Washington Loan and Trust Company and Hugh M. Morris with the Wilmington Trust Company was amended so as to provide that instructions concerning such agency were to be given in writing by Hugh M. Morris and "* * * two duly authorized officers of The Riggs National Bank * * *".

The petition for instructions here in issue, which was filed by the executors of the estate of the deceased trustee Hugh M. Morris and Wilmington Trust Company, concludes by submitting a number of prayers for instructions concerning the claim of The Riggs National Bank that it is the sole surviving trustee of the Saulsbury trust; the duties, if any, of the executors of the estate of Hugh M. Morris concerning the investments held in the Saulsbury trust, and such executors' claimed right to be paid additional commissions out of trust principal.

On May 6, 1966, the executors of the Morris estate moved for an order for the appointment of a guardian *ad litem* to represent "* * * the remainder interest or interests in the testamentary trust created under the Last Will and Testament of Willard Saulsbury * * *" and for the appointment of an *amicus curiae* "* * * to advise the Court with respect to the right of The Riggs National Bank of Washington, D. C. to act as sole trustee of the trust estate of Willard

Saulsbury and to take a position adverse to said bank with respect thereto * * *". The Riggs National Bank having been heard on such oral motions, the Court appointed Henry R. Horsey as guardian *ad litem* and *amicus curiae* for the purposes recited in its May 6 order. Copies of such order were mailed to Willard Saulsbury, a grand-nephew of the testator and a beneficiary under his will, and also to the Attorney General of Delaware. The latter have taken no part in these proceedings.

On May 27, 1966, Riggs answered the pending petition. Such answer affirmatively pleaded its claim that it is the sole surviving *de jure* trustee of the Saulsbury trust. Such answer also asserted its claimed right to remove the securities held in the Saulsbury trust from the custody of the Wilmington Trust Company, and in an affirmative defense questioned the standing of the executors of the Morris estate to seek instructions concerning an estate in which they have no interest. Such answer also contended by way of affirmative defense that inasmuch as the late Hugh M. Morris had advised Riggs concerning its duties as trustee, including qualifying Riggs to act as trustee of the Delaware trust here in issue, that the executors of the Morris estate are estopped to question the regularity of the appointment of Riggs as trustee. Full opportunity was afforded to all appearing parties to supplement their pleadings by affidavits, interrogatories and requests for admissions and to brief their respective positions concerning the matters in issue. This is the Court's opinion on petitioners' prayers for relief.

Riggs first contends that the pending petition must be dismissed because petitioners have no interest in the Saulsbury trust, not being in any sense fiduciaries of such fund. They cite *Miller v. Cooch*, 5 *Del.Ch.* 161, in which an original bill for construction of a will was threatened with dismissal because it was filed by the executor of a legatee and not by the administrator charged with the carrying out of the terms of the will. The Court had further indicated that the bill was deficient in that it failed to contain a sufficient prayer for relief. However, the bill having been amended by the parties in interest, the points in issue were decided and the Chancellor's rulings were affirmed on appeal, in *Cooch v. Cooch*, 5 *Houston* 540.

In the case at bar, the appointment of a guardian *ad litem* and *amicus curiae,* on petitioners' application, made with the knowl-

edge of Riggs, has led not only to a full exposition of the matters now to be decided as well as the ultimate rights and interest of the remaindermen of the trust in issue, but also of the opposing views on the claimed need for the appointment of a co-trustee. Furthermore, as executors of the Morris estate, petitioners actually have an interest in the Saulsbury trust inasmuch as the executors of such estate are asserting a right to receive additional principal commissions allegedly due the Morris estate from such trust fund, and the Wilmington Trust Company is obviously concerned about the situs of the assets of the trust estate. In any event, statutes such as 10 *Del.C.* § 6501, which are designed to provide for declaratory relief where an actual controversy exists, would appear to permit any person with an interest in a trust to seek instructions from a court of equity. See *National Shawmut Bank of Boston v. Morey,* 320 *Mass.* 492, 70 *N.E.2d* 316. Finally, the critical issues here are whether or not Riggs became a *de jure* trustee upon the consolidation of Riggs and The Washington Loan and Trust Company and whether or not Riggs is now authorized to act as sole trustee.

■ In view of the primary question raised by petitioners, namely whether or not a corporation may rely on the principle of joint tenancy to establish its claim to be sole surviving trustee, they might well have been derelict in their duty not to have invoked judicial aid. See Bogert, *Trusts and Trustees (2nd Ed.)* § 529 p. 384. I conclude that to require a realignment of parties now as well as an amendment of the pleadings would result in a needless circuity of action in view of the full presentation of the interested parties' respective contentions. Riggs' motion to dismiss the pending petition for instructions will be denied.

■ At the time that Willard Saulsbury executed his last will, namely June 18, 1926, and at his death in 1927, there was no statute in force in Delaware comparable to Title 8 *Del.C.* §351.[1] It was not until March 18, 1929 [2] that the prototype of Title 8 *Del.C.* § 351 was

1. This statute authorizes the appointment by will of a properly qualified foreign corporation to act as trustee of a domestic trust provided the domiciliary state of the foreign corporation in question confers like powers on Delaware corporations.

2. According to *Bogert, Trusts and Trustees (2nd Ed.)* § 132 p. 642 the power of a foreign trustee of a testamentary trust "* * * depends upon the law of the testator's residence at the time of his death."

enacted. See 36 *Laws of Delaware,* Chapter 139. However, long prior to such date, namely on March 23, 1903, the forerunner of present Title 8 *Del.C.* § 341, which permits a foreign corporation[3] to qualify to do business in Delaware, had been adopted. See 22 *Laws of Delaware,* Chapter 395, §§ 1 and 8.

Riggs contends that upon Victor B. Woolley's death in February, 1945, that The Washington Loan and Trust Company properly qualified as successor trustee of the Saulsbury trust by complying with the procedure outlined in 8 *Del.C.* § 341, and there is no doubt that it complied with the procedure outlined in the statute. Riggs further contends that having consolidated with The Washington Loan and Trust Company on October 1, 1954 under the national banking statute then in force and effect, that, in the language of the statute, (12 *U.S.C.* §§ 215-215b),

"* * * the corporate existence of each of the constituent banks and national banking associations participating in such consolidation * * * shall be merged into and continued in the consolidated national banking association and the consolidated association shall be deemed to be the same corporation as each of the constituent institutions * * *".

Furthermore, the cited statute provides that a constituent institution in such merger shall *ipso facto* continue to hold the same rights as trustee in the same manner as enjoyed by such institution at the time of the consolidation. Riggs goes on to document the fact that after "withdrawing" The Washington Loan and Trust Company from Delaware, it proceeded to qualify on November 29, 1954 to do business in Delaware under the provisions of Title 8 *Del.C.* § 341. Riggs concludes that it has accordingly acted as *de jure* co-trustee of the Saulsbury trust since 1954 and that upon the death of Hugh M. Morris it became sole surviving trustee. Riggs accordingly sees no justification for the appointment by this Court of a trustee to succeed the late Hugh M. Morris.

The *amicus curiae* takes the position that Title 8 *Del.C.* § 351 obviously controls Riggs' claimed right to act as trustee of a Delaware

---

3. This privilege, however, is denied to a foreign corporation purporting to assert banking powers contained in its charter. See 1915 *Delaware Code* § 2101*g,* and 8 *Del.C.* § 350.

Trust and that assuming compliance is possible, Riggs does not, in fact, invoke the aid of such statute. The *amicus* further argues that in any event Riggs was never envisaged as a trustee by the testator, *In re Watkins Estate*, 113 *Vt.* 126, 30 *A.2d* 305, cert. denied *Howard National Bank & Trust Co. v. Morgan*, 319 *U.S.* 757, 63 *S.Ct.* 1177, 87 *L.Ed.* 1710, and that the original of 12 *U.S.C.* §§ 215-215b was not enacted until after Willard Saulsbury's death and may not be applied retroactively.

Finally, both petitioners and *amicus* rely on the now generally repudiated common law principle which holds that in a situation where an individual and a corporation serve as co-trustees, there can be no joint tenancy but rather a tenancy in common, the elements of mutuality as well as the unities concept generally required for the creation of a joint tenancy being absent in situations in which a corporation holds property with an individual, 1 *Scott on Trusts* (*2nd Ed.*) *Vol.* 1, § 103.1 p. 763, and *Bogert, Trusts and Trustees* (*2nd Ed.*) § 530 p. 392.

■ First of all, I am satisfied that when Willard Saulsbury named The Washington Loan and Trust Company to be successor trustee on the death of either Hugh M. Morris or Victor B. Woolley, he is presumed to have anticipated that it was within the realm of possibility that the named corporate trustee might change its name, reorganize, or consolidate with a local trust company or national bank. Accordingly, inasmuch as Riggs is the same institution as each of its constituent components, it should, unless otherwise disqualified, be deemed to possess the same authority to serve as trustee of the Saulsbury trust as was possessed by The Washington Loan and Trust Company prior to the consolidation, 12 *U.S.C.* §§ 215-215b, *De Korwin v. First National Bank of Chicago* (*C.A. 7*) 179 *F.2d* 347, cert. denied 339 *U.S.* 982, 70 *S.Ct.* 1025, 94 *L.Ed.* 1386, and *New England Merchants Bank of Boston v. Centenary Methodist Church*, 342 *Mass.* 360, 173 *N.E.2d* 294. I decline to follow the opposite view expressed in *In re Watkins Estate, supra.* Finally, over many years, one of the pervading purposes of legislation governing national banking institutions has been to put such corporations on a basis where they can compete fairly with state trust companies.

■■ It is well established that whereas a corporation is a person it is not a citizen entitled to the equal protection of the laws and so may

be excluded by a foreign state from doing business within its borders, *Paul v. Virginia,* 8 *Wall,* 168, 19 *L.Ed.* 357. However, statutes such as 8 *Del.C.* § 341 and 8 *Del.C.* § 351, the first of which permits a foreign corporation to do business in Delaware and the second of which allows a qualified foreign corporation to serve as a trustee in Delaware, have modified such rule. I am satisfied, moreover, that the *Code of the District of Columbia* permits a foreign trustee to serve in the District. See *D.C.Code* § 26-335 and the *Banking Law Journal,* May, 1964, p. 397 "Rights of Out-of-State Banks to Act as Fiduciary Without Qualifying To Do Business". However, as noted earlier, the second Delaware statute above referred to was not enacted into law until some two years after the testator's death. Can it be said therefor that the general provisions of 8 *Del.C.* § 341 provide an appropriate method of qualifying a foreign fiduciary named in a Delaware will probated prior to March 18, 1929?

Next, inasmuch as this Court is generally bound by the common law of England as it existed at the time of the separation of this State from Great Britain, except where altered by statute or decision, *Clawson v. Primrose,* 4 *Del.Ch.* 643 (but see *Lynch v. Hill,* 24 *Del.Ch.* 86, 6 *A.2d* 614), may the common law principle that a corporation and an individual may not hold property as joint tenants be disregarded[4] by this Court as obsolete and no longer the law? Finally, did the 1954 withdrawal from Delaware of The Washington Loan and Trust Company affect its right to continue to serve in Delaware as a surviving and integral component of its consolidation with Riggs, assuming that it was properly qualified to serve as trustee in Delaware in the first place?

■ In a will construction case the primary task for the court is to determine, insofar as possible, the intent of the testator. In 1927, Willard Saulsbury had many relatives throughout Delaware but no

---

4. The common law rule was repealed in England by the *Bodies Corporate (Joint Tenancy) Act,* 1899, 62 & 63 *Vict.C.* 20. The old rule has been generally ignored in the United States, Vol. 1, *Scott on Trusts,* § 103.1 p. 764. See *Hofheimer v. Seaboard Citizens' National Bank of Norfolk,* 154 *Va.* 392, 153 *S.E.* 656, cert. denied 283 *U.S.* 855, 51 *S.Ct.* 648, 75 *L.Ed.* 1462. But compare *American Bible Society v. Mortgage Guarantee Co.,* 217 *Cal.* 9, 17 *P.2d* 105, and *Bank of America National Trust and Savings Ass'n v. Long Beach Federal Savings and Loan Ass'n,* 141 *Cal.App.2d* 618, 297 *P.2d* 443.

immediate next of kin. He made the son of his namesake and grand-nephew "* * * who first attains the age of twenty-one years * * *" the primary remainderman of his substantial estate, his will and codicil providing that after all life beneficiaries had died that the designated son of the grandnephew Willard (son of James) should receive the entire remainder, principal and interest, of the Saulsbury trust. In 1927, Willard Saulsbury, the testator's namesake, was nineteen years of age. The normal expectation at the time of the testator's death would be that such grandnephew would sire a son (if he was ever to produce one) during the lifetime of the individual trustees, one of whom lived until March, 1966. In fact, it is conceivable that the trust might have terminated by now had the grandnephew's marriage not so far proven barren. In other words, the naming of The Washington Loan and Trust Company as a successor trustee appears to have been fundamentally a demonstration of caution on the part of the testator although he did not exercise similar caution in naming as successor trustee a foreign corporation which might possibly be called upon to serve in Delaware.

In contending that Riggs is properly qualified "* * * to do * * * business * * *" in Delaware under the terms of Title 8 *Del.C.* § 341, and not under the terms of *Title* 8 *Del.C.* § 351, its counsel argues that while the foreign trustee referred to in the latter statute may be "* * * a corporation organized and doing business under the laws of any state of the United States other than Delaware * * *", Riggs is a national banking association organized under the laws of the United States. The Washington Loan and Trust Company, however, was organized as a banking corporation of the United States under laws relating to the District of Columbia. *Title* 1 *Del.C.* § 301 provides that when applied to the different parts of the United States the word "State", when used in the Delaware Code, "* * * includes the District of Columbia * * *", and 12 *U.S.C.* §§ 215-215b specifically provides that a consolidated banking association "* * * shall be deemed to be the same corporation as each of the constituent institutions * * *".

I conclude that it is unnecessary to resolve the several technical points of law discussed above because having served as trustee since 1954 and having had its biennial accounts thereafter duly approved by this Court (the last trustees' account having been ap-

410

proved on June 3, 1965), in my opinion Riggs should be authorized to continue to serve as trustee of the Saulsbury trust and its long accepted status as trustee should be formalized by an appropriate order, it being clear that it is not against the public policy of this State to have a foreign corporation such as Riggs serve as trustee of a Delaware trust.[5] There is, however, no clear intent in the Saulsbury will that a corporate trustee should serve as sole trustee of his trust estate. I consider it significant that the will refers to "my trustees". More significantly, all of the circumstances surrounding the creation and administration of the trust in issue, in my opinion, compel this Court to conclude that it has authority to appoint and should appoint a successor to the late Hugh M. Morris whether such appointment be deemed the naming of a successor trustee or the appointment of an additional trustee, *Restatement of the Law of Trusts* (2nd Ed.) § 108, comment (e), *Bogert, Trusts and Trustees,* (2nd Ed.) § 532, p. 406 *et seq.,* and *Broeker v. Ware, 27 Del.Ch.* 8, 29 A.2d 591. Such trustee, when appointed, will, of course, share trust responsibilities with The Riggs National Bank. Willard Saulsbury, despite his legal, political, and banking interests in Washington, clearly looked upon himself as a Delawarean, as stated at the beginning of his will. He entrusted the administration of his trust to two Delawarean friends, both of them learned in the law, who served together for eighteen years as co-trustees. I am satisfied that, insofar as possible, a similar person should be appointed to serve as co-trustee with Riggs. In the event that the trust estate should ultimately be distributed among the descendants of the testator's grandfather, a happening which appears likely to occur, a qualified Delawarean would be able to contribute greatly to the geneological research which would then be required. It follows that such individual trustee will succeed to the rights and duties of the late Hugh M. Morris as a party to the then trustees' May 26, 1945 agreement with the Wilmington Trust Company (as amended on March 22, 1955), such agreement being "* * * binding upon the Principals, their successors or assigns * * *".

Rule 132(e) of this Court provides that "* * * Upon partial or complete distribution of any trust, or upon transfer to a successor trustee * * *" designated principal commissions shall be paid,

---

5. Riggs is presumably subject to service of process in Delaware concerning matters involving the trust here in issue. Compare *In re Wright's Petition,* 35 Del.Ch. 476, 121 A.2d 911.

the amount of which are made to depend upon the size of the trust involved and the length of a trustee's service. During the lifetime of Hugh M. Morris, principal commissions were paid to him and the corporate trustees from 1947 through 1965 on the basis of the provisions of Rule 132(*b*). While Rule 132(*e*) is silent as to what transpires upon the death of an individual trustee. I am satisfied that the order to be entered herein will constitute a transfer of the trust within the present meaning of the rule. Accordingly, inasmuch as Hugh M. Morris served as trustee almost four times ten years, the period fixed in the rule for maximum commissions, his estate is entitled to full principal commissions calculated on the formula set forth in the rule, such commissions being deemed reasonable in light of the nature and extent of the late trustee's services, although it is recognized that the appointment of successive trustees in certain instances may be deemed unreasonably to deplete an estate, *In re McGuffey's Estate,* 123 *Pa. Super.* 432, 187 *A.* 298. Compare *In re Kennedy's Trust,* 364 *Pa.* 310, 72 *A.2d* 124, and see *Vol. III Scott on Trusts,* § 242.11, at p. 1951 *et seq.*

An order in conformity with this opinion may be submitted on notice.