[Civ. No. 3150.  Second Appellate District, Division One.—March 4, 1920.]

## J. H. CARTER et al., Appellants, v. J. E. BLENKIRON, Respondent.

[1] TRUSTS — VOLUNTARY CONVEYANCE TO ANOTHER — ABSENCE OF FRAUD OR BENEFICIAL PROMISES.—In this action to establish a parol trust in certain real property which had been conveyed by plaintiffs to defendant and, in connection therewith, to compel an accounting by the alleged trustee, as found by the trial court, there was no promise made by defendant for plaintiffs' benefit, and he practiced no fraud or deceit whereby they were induced to convey the property to him, their act in so doing having been voluntary and prompted by the desire and for the avowed purpose of circumventing another who had acquired a note secured by a deed of trust to the property in deriving any benefit or profit from acts which they felt were unwarranted and oppressive toward them; hence there was no ground for plaintiffs' contention that a constructive trust in their favor was created.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Frank G. Finlayson, Judge.  Affirmed.

The facts are stated in the opinion of the court.

W. L. Albert for Appellants.

James P. Clark for Respondent.

SHAW, J.—Action to establish a parol trust in real estate and, in connection therewith, to compel an accounting by the alleged trustee.  Judgment went for defendant, from which plaintiffs appeal.

As appears from the complaint, the action is founded upon the alleged fact that plaintiffs, relying upon defendant's promises, did, by unconditional grant deed, convey the land to defendant upon his oral agreement to pay certain indebtedness against the property, secured by a trust deed thereon, after which he would sell the same and pay to plaintiffs, the purchase money received therefor, less the sum paid in satisfaction of the deed of trust and reasonable expenses in effecting such sale; all of which allegations were denied by the answer.

[1] The court, in substance, found that, while plaintiffs made the deed to defendant, the making thereof was not accompanied, preceded, or followed by any agreement between plaintiffs and defendant or promises made by defendant, either verbal or written, that plaintiffs or either of them should have or retain any interest in said land or the proceeds of the sale thereof; that said deed was not made or delivered in trust for the benefit of plaintiffs or either of them, and that defendant never agreed that he would protect plaintiffs from the indebtedness so secured by deed of trust upon said land and under which it was to be sold, or that he would sell said property and pay to plaintiffs any sum of money in excess of the mortgage debt, less the reasonable expenses of effecting such sale; that plaintiffs did not believe or rely upon any promises or agreements alleged in the complaint to have been made by defendant when they made the deed to him, and did not convey the property to defendant in trust or for the benefit of plaintiffs or either of them, and that defendant did not deceive or mislead plaintiffs in any matter or thing connected with the making of said deed, and did not practice any fraud or deceit upon plaintiffs to procure the making thereof, but that said deed was voluntarily made by plaintiffs, without consideration, ''and because plaintiffs would rather that defendant should own said property than that the same should be entirely lost to them by sale'' under said first deed of trust.

As disclosed by the record, these findings are based upon the following facts clearly established by ample evidence: The land in question, prior to the transactions here involved, was subject to four deeds of trust given to secure the payment of promissory notes. The first deed of trust, for some twenty-three thousand dollars, was for the benefit of one Haas; the second and third were for the benefit of these plaintiffs, and the fourth was for the benefit of Ordway. Plaintiffs caused the property to be advertised for sale under the terms of the second and third deeds of trust, which sale took place a few days prior to October 1, 1912, at which time they as purchasers under said deeds of trust acquired title to the lands, subject, however, to the prior deed of trust given to secure payment of the note for twenty-

three thousand dollars payable to said Haas. Realizing the effect which this sale would have upon his rights under the fourth deed of trust, Ordway acquired the note secured by the first deed of trust and proceeded to advertise the property for sale under the terms thereof, which sale, as advertised, was to be made at 11 o'clock A. M. on October 1, 1912. For the purpose of raising money to protect their interest in the property, and after futile efforts to procure a loan elsewhere, plaintiff J. H. Carter, on September 30, 1912, in company with a broker, went to an office, where he for the first time met defendant and from whom he solicited a loan of money wherewith to pay the indebtedness for which the property was about to be sold. Defendant declined to consider the making of the loan, and thereupon Carter proposed to sell to him plaintiffs' interest in the land for five hundred dollars. The representations as to the condition and character of the land were such that defendant caused Charles Nowlin to go to Imperial County, where the land was located, to examine the same and verify plaintiffs' representations. In the forenoon of October 1, 1912, plaintiffs went to the office of defendant, where they caused a grant deed to be prepared, which they signed and acknowledged, leaving it with defendant for his acceptance, subject to a favorable report by Nowlin. On the morning of October 1st the sale was postponed to 11 o'clock A. M. the next day, prior to which time, and on October 1st, Nowlin made an adverse report as to the character and condition of the land, in addition to which defendant learned the acreage of the land was considerably less than as represented by plaintiffs, and as a means of obtaining water for irrigation it carried no water stock, contrary to Mr. Carter's representations. By reason of these facts defendant declined to purchase the property or have anything further to do with the matter, and returned the deed to said plaintiff. During the negotiations Carter repeatedly expressed a feeling of bitterness toward Ordway, saying in substance that the land was worth more than the debt and that Ordway, whom he designated as "that skinner," had gone over his head and bought the first trust deed to beat him out of the property, due to which fact he said he would rather anybody other than Ordway should have the land and that he would rather defendant take it as a gift than that Ordway should profit

by the sale. Apparently with no purpose other than curiosity, the parties with their respective friends proceeded to the place where the land was to be sold, and on the way Carter tendered the deed to defendant, who said, "Now, Mr. Carter, I tell you right now if I take hold of this deal I want it distinctly understood I am under no obligations to you whatever," to which Carter replied, "All right"; the making of which statement is not denied by Carter, but in substance admitted. On their arrival, the trustee was preparing to call the sale and Ordway, who was the owner of the water stock attached to the property, was present ready to bid the sum due him under his deed of trust. Not only plaintiff Carter and his friends, but friends of defendant were expressing and had theretofore expressed the opinion that the land was worth more than the indebtedness, even without the water stock; and thus urged defendant inquired of Ordway what he would take for the water stock, and the price fixed being satisfactory to him, he then concluded to and did agree to pay some twenty-four thousand dollars in liquidation of the indebtedness, as a result of which the making of the sale was abandoned and defendant acquired title to the property through the deed given him by plaintiffs, subject, however, to certain amounts due for taxes.

These and other minor facts which the evidence tends to prove justified the court in concluding that plaintiffs, since they were unable to protect the land from the sale, and prompted by a desire at all events to circumvent the supposed design of Ordway in buying the note secured by the deed of trust and procuring a sale of the property as a means of acquiring title thereto, gave the deed to defendant knowingly and intentionally, making their interest in the property the subject of a gift to him, who, when the deed thereto was tendered, and in order to prevent any misunderstandings due to the former negotiations, admittedly told plaintiffs that if he took hold of the deal he wanted it distinctly understood that he was under no obligation whatever to them.

As found by the court, there were no promises made by defendant for plaintiffs' benefit, and he practiced no fraud or deceit whereby they were induced to convey the property to him. Their act in so doing was voluntary and prompted

by the desire and for the avowed purpose of circumventing Ordway in deriving any benefit or profit from acts which they felt were unwarranted and oppressive toward them. Hence there is no ground for appellants' claim that a constructive trust in favor of plaintiffs was created.

There are other technical grounds urged by respondent upon which it is claimed the judgment should be affirmed, but since upon our view of the findings no trust of any kind could be deemed to have been created, it is unnecessary to discuss the same.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1920.

All the Justices concurred, except Shaw, J., who was absent.