[Civ. No. 26286. First Dist., Div. Two. Mar. 17, 1970.]

LEONARDO MANTI, as Executor, etc., Plaintiff and Respondent, v. DOMINIC GUNARI, Defendant and Appellant.

444

**COUNSEL**

J. Elwood Andresen for Defendant and Appellant.

Harold I. Miller for Plaintiff and Respondent.

## OPINION

**DAVID, J. pro tem.**\*—This is an appeal from a judgment declaring appellant Dominic Gunari has no right, title or interest to a $20,000 bank account, maintained in the name of "MANTI, Pietro or GURNARI, Dominic," at the time of the death of Manti. The respondent, successful in the court below, is Leonardo Manti, admitted to be the surviving nephew of Manti and sole beneficiary under a 1953 will.

The complaint was headed, "Complaint for Declaration of Constructive Trust in Property Obtained Through Fraud, Mistake and Undue Influence." The appellant's surname throughout this proceeding has been written Gunari, and no claim is made that he is not the Dominic Gurnari named in the bank records.

The first "cause of action" alleged that deceased, Pietro Manti, age 84, was illiterate; that during the last six years of his life by reason of age, infirmity and alcoholism, his mental faculties were so impaired he was easily influenced by defendant Dominic Gunari, a young man about age 40, who served Manti as his confidential agent the last four years of life.

That within those four years, Manti had a large sum of money, about $18,000, on deposit in the Diamond Branch of the Bank of America, Oakland.

That during said four-year period Manti had a strange attachment for Gunari, induced by unnatural flattery and attentions given Manti by Gunari, to the extent he kept constant company with Gunari, exclusive of his relatives (plaintiff was the only one) and his old friends; and consulted Gunari constantly about his business affairs; and taking advantage of his trust and confidence in Gunari, Gunari did influence deceased's mind and actions and thereby procured deceased to make Gunari a joint tenant of deceased's bank account, having the right to withdraw monies therefrom for any purpose at any time without any further action whatsoever on the part of the deceased, and on deceased's death having sole right to said bank account; that at the time defendant was made a joint tenant deceased was wholly under the influence of defendant, ill, infirm, nearly blind and under the influence of alcohol.

The purported "second cause of action" is repetitive, it being further alleged that prior to decedent's death Gunari represented to Manti that he would help him in his business affairs, and that a joint bank account would serve such purpose, allowing Gunari to deposit and withdraw money

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

for Manti; and as a result of such representations, Manti made Gunari a joint tenant of the bank account with right of survivorship; that Manti was unaware of the rights conferred by joint tenancy in said bank account and relied on defendant's fraudulent representations; and had he known of the true facts he would not have created such joint tenancy.

Again a repetitive third count added that the transfer of funds into a joint tenancy account was instituted and consummated by mistake and had deceased known of the true effect of his signature, he would not have signed.

The fourth purported "cause of action" alleged that Manti allowed Gunari's name to be placed on the signature card to allow Gunari to deposit and withdraw money for the deceased Manti; that he never intended to create a joint bank account with said defendant and did not create a joint bank account.

The fifth cause adds that defendant refuses to make an accounting. As to all counts, the prayer is, that it be declared Gunari holds the funds constructively in trust for plaintiff.[1]

The answer was by way of general denial; except that it was admitted that the plaintiff is an heir at law of Pietro Manti, and sole beneficiary under a will dated July 12, 1953; that Pietro Manti was of advanced age, that defendant is a young man about 40 years of age; and admitted Pietro Manti made defendant a joint tenant of deceased's bank account.

■ Where this is contested, the burden of proof is initially upon the plaintiff, not the defendant, contrary to the assumption of the trial court. (Cf. *Estate of Morcel* (1912) 162 Cal. 188 [121 P. 733].) The evidence did not show any action of Gunari to procure the joint account. Hence, the burden did not shift to him. (Cf. *Estate of Lingenfelter* (1952) 38 Cal.2d 571, 586 [241 P.2d 990].)

■ The findings that plaintiff is the nephew of Pietro Manti and his sole relative residing in the United States, and that he is the sole beneficiary under the will of Pietro Manti dated July 12, 1953, fail to support plaintiff's right to maintain this action. Only the duly qualified executor

---

[1]We distinguish between plaintiff's cause of action and the theories embodied in the five counts, denominated causes of action. The *cause of action* here is plaintiff's claim of entitlement to the funds in the bank account of the decedent. The *counts* seeking of different remedies or different theories of relief are not in themselves causes of action. (*California Trust Co.* v. *Cohn* (1932) 214 Cal. 619, 629 [7 P.2d 297]; *Wulfjen* v. *Dolton* (1944) 24 Cal.2d 891, 895-896 [151 P.2d 840]; *Bacon* v. *Wahrhaftig* (1950) 97 Cal.App.2d 599, 604 [218 P.2d 144]; *Eichler Homes of San Mateo, Inc.* v. *Superior Court* (1961) 55 Cal.2d 845, 847 [13 Cal.Rptr. 194, 361 P.2d 914].)

or administrator may bring an action for recovery of personalty. (*Hall* v. *Alexander* (1937) 18 Cal.App.2d 660, 663 [64 P.2d 767]; *Rogers* v. *Bank of America* (1956) 140 Cal.App.2d 228, 232 [294 P.2d 959].) Plaintiff alleged such capacity, but no admission was made nor proof offered on the point.

This was a savings account, not a commercial account for day to day transactions. The pertinent provision of the signature card (which constitutes the contract) is: "Undersigned further agrees that all funds now on deposit or which hereafter may be placed on deposit of said account shall be the property of the undersigned as

☐ INDIVIDUAL ☐ TRUSTEE (See Beneficiary Identification attached, if applicable)

☐ JOINT TENANTS who may withdraw funds upon number of signatures indicated below except in the event of conflicting demands of the undersigned . . .

"Number of signatures required to withdraw funds————— . . .

> 1. [Signed] Pietro Manti
> Signature
> 2. [Signed] Dominic Gurnari
> Signature"

On the obverse the legend appears:

"SIGNATURE CARD: INDIVIDUAL, TRUSTEE OR JOINT TENANCY."

Under the language of Civil Code section 683, "A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, *or by transfer from a sole owner to himself and others* . . . ." (Italics added.)

■ The finding by the trial court that the interest was created in the disjunctive is not supported by the evidence. This was of material prejudice to appellant since the use of the word "or" does not create a joint tenancy. (*Cooke* v. *Tsipouroglou* (1963) 59 Cal.2d 660, 664 [31 Cal.Rptr. 60, 381 P.2d 940]; cf. *Denigan* v. *San Francisco Sav. Union* (1899) 127 Cal. 142, 147 [59 P. 390], where "payable to either" was held insufficient without any other declaration of the depositor as to joint tenancy or survivorship.)

The trial court found that the signature card produced by the bank did not state the monies are payable to the survivor, and that no bank document altered the form of the account thereafter; that the account was

opened on the form to permit Mr. Gunari to make deposits and withdrawals for Mr. Manti, made necessary by Mr. Manti's declining health, making visits to the bank a great physical hardship; the source of all money in the account was Pietro Manti; all monies withdrawn were for the use and benefit of Manti and defendant (Mr. Gunari) has not withdrawn any money from the account since Mr. Manti's death in April 1966; and that approximately $20,000 is in the account.

From these evidentiary findings, the court concluded as a matter of law that the monies in the account were the separate property of Pietro Manti at the time of his death, and defendant had no right, title or interest in the account after Manti's death, and that a constructive trust may be declared in the monies in said account for the benefit of the estate of Pietro Manti. Judgment was entered accordingly.

Appellant tendered, and the court refused, a special finding relative to the allegations of paragraph II of the first count, carried by reference into the fourth. These asserted that by reason of his age, physical condition and alcoholism Pietro Manti was easily influenced by a person in whom he had confidence and that during the last four years before and up to decedent's death Gunari had served as deceased's confidential agent. Appellant was entitled to a finding under the evidence that the bank account was not the product of any such undue influence.

Motion was duly made to vacate the judgment, and to enter a judgment for defendant; and in the alternative, to grant a new trial, both of which were denied.

We have concluded that the defendant Gunari was entitled to judgment.

The basic difficulty is, that the findings only state evidentiary facts, all of which are consistent with ownership of the funds by Gunari, and consistent with his testimony, which was neither disputed on the one hand nor found to be untrue on the other. As to the circumstances on opening the account on Christmas Eve 1963, the testimony was: "MR. ANDRESEN: Q. Mr. Gunari, at the time that this account was opened, how did you happen to go to the bank on that occasion? A. Well, sir, it was like another day Mr. Manti asked me to take him to the bank. He had some business. So I drove him down and picked him up at his home, drove him down to the bank. We went to the bank. Q. Did you accompany him into the bank? A. Yes, sir. Q. And what happened when you got into the bank? A. He looked around to see the manager, and he was not present. Q. And who did he talk to at the bank at that time? A. Mr. Sanford, who was in the area of the manager's space. ■ Q. And what did he say to Mr. Sanford at the time that that account was opened? A. Well, he said,

' I want to put this boy's name on my bank account,' he said, 'because pretty soon I'm going to die and I want to give him the money.' "

An objection this was self-serving was withdrawn, and that it was hearsay was overruled, subject to a motion to strike, not ruled upon. Decedent's statements are properly received. (Evid. Code, § 1261.)

"Q. Will you say what Mr. Sanford said? A. Then he said, Mr. Sanford said, 'Well, I think I could handle that.' He went overhead and got another book and brought it over here. There was also a withdrawal situation that came into this picture. So he says, 'You might as well go on a joint account,' or 'joint tenancy.' I don't understand the terms too well. And so he brought another card and I had to sign it. . . .

"THE COURT: Who was Mr. Sanford? THE WITNESS: Mr. Sanford was in charge, or second in command, I would say, sir, at the present time at the bank. He is over in the San Francisco branch now."

In his interrogatories, Gunari testified a joint bank account was opened; and that the substance of the conversation with deceased was that he "wanted me to have proceeds of account on his death."

Under the facts, appellant contended that there could be no constructive trust imposed upon him, absent wrongdoing, fraud or deceit.

It is to be noted that in the first three counts plaintiff alleged the existence of a joint tenancy account, with right of survivorship, which was duly admitted by the answer, and *pro tanto,* removed from further factual contest. In the fourth, plaintiff averred no such account was created. ■ While inconsistent *theories* of recovery are permitted (*Pascoe* v. *Morrison* (1933) 219 Cal. 54, 58 [25 P.2d 9]), a pleader cannot blow hot and cold as to the *facts* positively stated. (*Beatty* v. *Pacific States Sav. & Loan Co.* (1935) 4 Cal.App.2d 692, 697 [41 P.2d 378], approved in *Steiner* v. *Rowley* (1950) 35 Cal.2d 713, 719 [221 P.2d 9], and *Faulkner* v. *California Toll Bridge Authority* (1953) 40 Cal.2d 317, 328 [253 P.2d 659]; and *Kronsberg* v. *Milton J. Wershow Co.* (1965) 238 Cal.App.2d 170, 175 [47 Cal.Rptr. 592]; *Goldstein* v. *Enoch* (1967) 248 Cal.App.2d 891, 894 [57 Cal.Rptr. 19]; *Owens* v. *Traverso* (1954) 125 Cal.App.2d 803, 806 [271 P.2d 164]; *Miller* v. *City & County of San Francisco* (1960) 187 Cal.App.2d 480, 482-483 [9 Cal.Rptr. 767]; cf *Harrison* v. *Hanson* (1958) 165 Cal.App.2d 370, 377 [331 P.2d 1084].)
■ To verify inconsistent facts alleged in a complaint indicates perjury in the matter. But the rule also applies to unverified pleadings. The code requirement is to state the *facts,* not theories (Code Civ. Proc., § 426, subd. 2): "A statement of the facts constituting the cause of action, in

ordinary and concise language." (Cf. 8 U.C.L.A. L.Rev. 1004, 1008-1010).

■ In reference to the antagonistic allegations in the single cause of action the court is required to take as true the averments in the complaint which bear most strongly against the pleader, when sustained by the allegations of the complaint as specifically admitted in the answer (*Beatty* v. *Pacific States Sav. & Loan Co., supra,* 4 Cal.App.2d at p. 697; 71 C.J.S. § 54, Subd. c, p. 139.)

The record herein strongly indicates that until the signature card was produced, all parties were acting on the assumption it formally was sufficient to create a joint tenancy with right of survivorship in Gunari. Hence, the quick attempt to dismiss the first three embarrassing counts when faced with a motion for nonsuit. ■ But even as one may not abandon or omit allegations in successive complaints so as to state a cause of action, the abandonment of the first three counts for failure of plaintiff's proof does not obliterate the allegations and admissions. As we will indicate, a joint interest was created, however it might legally lack a direct declaration to effect joint tenancy with right of survivorship.

Counsel for plaintiff asserted as to the testimony of the declaration of the decedent "There was some discussion that he [Gunari] was supposed to get it at death. The only way to get it at death is by following the testamentary formalities. You can't hold onto your property during this life and then dispose of it otherwise at death. That is why we have the statute of Wills, and so on." And again, "My research indicates and I feel the cases will go in accord with this, that if you remain in control, in sole control of your property until your death, you have to dispose of it according to testamentary formalities, you can't keep the strings on the property until your death unless you wanted to dispose of it by death. You can't have your cake and eat it at the same time. As to the theory as far as gift during lifetime or not, there has to be an immediate gift at the time the account is opened. There has to be a dual right to the account.

"THE COURT: You mean on December 24, 1963, the transfer had to be made?

"MR. MILLER: That is right, exactly."

■ While it has been held that a gift is not complete until accepted by the donee, appellant's signature to the agreement on the signature card that both were owners of the account was an acceptance. (Civ. Code, § 1146; *Bell* v. *Moloney* (1917) 175 Cal. 366, 368 [165 P. 917].)

The case last cited asserts the view that such circumstances establish a gift and a trust in favor of the survivor as to the remainder in the account.

Nowhere is it found that Pietro Manti did not go to the bank and declare his intent to leave the balance of the account to defendant Gunari when he died. The testimony of Gunari on this point was not contradicted. The circumstances of Gunari's close relationship with decedent in his last years, and the absence of such association with plaintiff was pleaded by the plaintiff. The limited evidence permitted showed his friendly assistance to the decedent over some years. The setting up of the savings account in the two names, with the declaration noted, on Christmas Eve, has corroborative implications.

The requirements of Civil Code section 683 and Financial Code section 852 were not met. There was a failure to put a checkmark in the "joint tenancy" box on the form. But the written declaration of ownership of both made by both is to be given effect. (*Kennedy* v. *McMurray* (1915) 169 Cal. 287, 293, 295 [146 P. 647].) The cited case involved the same type of evidentiary considerations advanced in the findings in the instant case; and the trial court there reached the same result, which was reversed.

The principal reliance of plaintiff is *Crocker-Anglo Nat. Bank* v. *American Trust Co.* (1959) 170 Cal.App.2d 289 [338 P.2d 617], in which the testimony indicated the laxity of another neighborhood bank in preparing the signature card and contract. Unlike this case, where both names were on the ledger card, the decedent's name there was the only one carried on the ledger account (*idem*, p. 292) although his wife's name was on the signature card; it was found that decedent always had the passbooks in his possession, that he did not inform his wife nor the bank that he intended to create joint tenancy accounts (*idem*, p. 294). There was not any declaration of joint ownership, such as is on the signature card before us.

It is said, however, " 'It has become the well-established law of this state that where funds have been deposited by one person with the intent to pass a present proprietary interest therein to another jointly with himself with right of survivorship, and the purpose fails, that is, the gift is incomplete by reason of some technicality in the law, and where the essential elements of a trust are established, the manifest intention of the donor may be sustained through the agency of a trust.' " (*Bank of America* v. *Hazelbud* (1937) 21 Cal.App.2d 109, 112 [68 P.2d 385].) A trust in personal property need not be in writing and no set form of words is necessary to create such a trust. (*De Olazabal* v. *Mix* (1937) 24 Cal.App.2d 258, 260 [74 P.2d 787], citing *Booth* v. *Oakland Bank of Sav.* (1898) 122 Cal. 19 [54 P. 370].)

 Absent a valid designation as a joint tenancy, with right of survivorship, the opening of an account in the names of "Pietro Manti" "Dominic Gurnari" with the written declaration of ownership, and the oral

declaration of intent by Manti that the balance should go to the survivor is sufficient upon death to entitle the survivor to recover the balance; where the acceptance of the trust by the bank as trustee can be shown. (Civ. Code, §§ 2221 and 2222; *Booth* v. *Oakland Bank of Sav., supra,* 122 Cal. at p. 24; *Randall* v. *Bank of America* (1941) 48 Cal.App.2d 249, 253 [19 P.2d 754]; *Bank of America* v. *Long Beach Federal Sav. & Loan Assn.* (1956) 141 Cal.App.2d 618, 623 [297 P.2d 443].)

In *Randall* v. *Bank of America, supra,* 48 Cal.App.2d 249, 253, 255, it is held that the validity of such a trust is not negatived because the depositor retains power to withdraw the deposit during his lifetime nor because he retains possession of the bankbook; that the creation of a valid trust is not at all dependent upon the existence of a present right to enjoy the funds beneficially; that the legal title to the remainder vests immediately in the beneficiary, and possession vests at the end of the life estate of the trustor and termination of the trust.

In *Drinkhouse* v. *German Sav. & Loan Soc.* (1911) 17 Cal.App. 162, 165 [118 P. 953], the situation was parallel to that in this case. Elizabeth Thomsen and Louisa H. Wilson went to defendant bank. Mrs. Thomsen closed an account. "Thereupon and in the presence and hearing of the said Louisa H. Wilson, she opened two new accounts with the bank which, at the request of Mrs. Thomsen, were entered upon the books of the bank in the name of 'Elizabeth Thomsen or Louisa H. Wilson.' . . . Two new bank-books in the name of 'Elizabeth Thomsen or Louisa H. Wilson' were issued and delivered into the personal possession of Mrs. Thomsen. Mrs. Wilson, it seems, went to the bank on this occasion at the request of Mrs. Thomsen . . . . After withdrawing the money from the old accounts and before establishing the new accounts Mrs. Thomsen said to the bank clerk who waited upon her that she desired to sign over to Mrs. Wilson whatever money she (Mrs. Thomsen) had in the old accounts, so that if anything happened to her Mrs. Wilson 'could take the pass-books and go to the bank and draw the money.' The clerk, in reply to Mrs. Thomsen, clearly indicated that a deposit of the money in the joint name of the two women and upon the condition stated would be accepted by the bank, and thereupon the accounts were opened with the bank and entered upon its books in the form hereinbefore stated." Mrs. Thomsen held the bankbooks at the time of death.

The court reversed a judgment in favor of the administrator under findings comparable to those in the instant case. (Cf. *American Bible Soc.* v. *Mortgage Guar. Co.* (1932) 217 Cal. 9, 13-15 [17 P.2d 105]; *Bell* v. *Moloney, supra,* 175 Cal. at p. 369.)

The plaintiff, and not the defendant, had the burden of proof in attempt-

ing to establish a constructive trust, and the evidence fails to support grounds to establish it. (Cf. *Carter* v. *Blenkiron* (1920) 46 Cal.App. 425, 428-429 [189 P. 305]; *Estate of Jacobs* (1938) 24 Cal.App.2d 649, 652 [76 P.2d 128].)

No special equity attaches to plaintiff as a collateral heir of the decedent, under the allegations of the complaint and the evidence. (Cf. *Estate of McDonnell* (1930) 109 Cal.App. 577, 578 [293 P. 651].) He was not the one showing interest in and caring for decedent, but defendant was, according to the allegations of the complaint.

As the cases cited, *supra,* indicate, these factors do not negative the ownership of Gunari declared in the bank signature card and contract, and are entirely consistent with the trust in the residue for Gunari on the death of Pietro Manti.

 The court erred prejudicially in refusing to make findings requested by Dominic Gunari relative to the allegations incorporated throughout the complaint, and particularly in paragraph I of plaintiff's fourth count adopting paragraphs I, II, and III of the first count, which have been outlined, *supra.*

Upon complete failure of proof of such allegations, justice requires that there be findings of their falsity, to protect the name and reputation of the defendant. Under the law, he was entitled to the findings requested. There was some evidence as to defendant's care and relationship with deceased. Consequently, findings were required on the material issues tendered by these allegations, injurious to a high degree since not supported by proof. (Code Civ. Proc., § 632; *Gilmore* v. *Gilmore* (1950) 99 Cal.App.2d 186, 187 [221 P.2d 123]; *Ryder* v. *Bamberger* (1916) 172 Cal. 791, 799-800 [158 P. 753]; *Wilcox* v. *West* (1941) 45 Cal.App.2d 267, 276 [114 P.2d 39].) Findings should be made against the one who has the burden of proof, where the proof fails. (*Owens* v. *Ring* (1953) 117 Cal.App.2d 672, 680 [256 P.2d 1040].)

Therefore, pursuant to Code of Civil Procedure section 909, Finding 3 is amended to conform to the proof to read "On December 24, 1963, Pietro Manti opened savings account No. 5339-1509, under the contract which provided that 'all funds now on deposit or which hereafter may be placed on deposit of said account shall be the property of the undersigned . . . 1. Pietro Manti 2. Dominic Gurnari,' and knowingly and intentionally signed his name as indicated; this being at Diamond Branch of the Bank of America, Oakland, California; and in connection therewith Manti declared orally that he did so in order that Dominic Gunari might have the balance of said account upon Manti's death; and that such intention was made known to, and purportedly was effectuated by, an

appropriate officer of said bank. That by inadvertence, it was not indicated upon the bank signature card that this was to be a joint tenancy with right of survivorship; and that this was not discovered until the parties herein went to trial; that at all times, the bank recognized the single signature of either in connection with such account; which was not consistent with any interest but joint tenancy."

The following additional findings are made:

12) It is not true:

(a) that Pietro Manti was totally unable to read or write;

(b) that Dominic Gunari at any time served as a confidential agent of Pietro Manti; nor that Gunari was a consultant of Manti in respect to Manti's business affairs;

(c) that Manti was unaware of the rights he conferred upon Gunari in opening said joint bank account; and that the contrary is true;

(d) that Gunari in any manner fraudulently or otherwise influenced Manti's mind and actions to suggest, induce or procure Manti to make Gunari a joint tenant of such bank account; and to the contrary, it is true that such action was wholly the product of Manti's volition and will;

(e) that Manti acted under the influence of alcohol, nor in respect to the opening of the account as set forth in Finding 3, that Manti's will and volition were impaired by any physical or mental illness or infirmity;

(f) that Manti acted in the premises under any mistake of law or that he acted under a mistake in fact.

The conclusions of law are ordered stricken; and the following substituted:

(1) The monies in said account were the separate property of Pietro Manti during his life, subject to a trust of the sums therein remaining upon his death for the benefit of Dominic Gunari; and that plaintiff has no right, title, nor interest therein.

(2) Defendant Dominic Gunari is entitled to judgment.

Accordingly, the judgment is reversed, and judgment is ordered to be entered for defendant Dominic Gunari, with his costs on this appeal.

Shoemaker, P. J., and Taylor, J., concurred.